ACCEPTED
03-14-00765-CV
4402607
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/6/2015 2:11:03 PM
JEFFREY D. KYLE
CLERK

NO. 03–14–00765–CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/6/2015 2:11:03 PM
JEFFREY D. KYLE
Clerk

NANCY JO RODRIGUEZ,

APPELLANT,

V.

THE WALGREEN COMPANY AND SARA ELIZABETH MCGUIRE,

APPELLEES.

On Appeal from the 419th District Court
Travis County, Texas

## BRIEF OF APPELLEES

JUDITH R. BLAKEWAY
State Bar No. 02434400
judith.blakeway@strasburger.com
CYNTHIA DAY GRIMES
State Bar No. 11436600
Cynthia.Grimes@strasburger.com
STRASBURGER & PRICE, LLP
2301 Broadway
San Antonio, Texas 78215
(210) 250-6003 Telephone
(210) 258-2706 Facsimile

**ATTORNEYS FOR APPELLEES**

1751449.6/SPSA/87282/0138/030615

## Identity of Parties and Counsel

In accordance with Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellees provide the following complete list of all parties and counsel to the trial court's order that forms the basis of this appeal.

| *Party* | *Trial Counsel* |
|---|---|
| NANCY JO RODRIGUEZ<br>*Appellant* | Lannie Todd Kelly<br>State Bar No. 24035049<br>THE CARLSON LAW FIRM, P.C.<br>11606 N. IH–35<br>Austin, TX 78753<br>Telephone: (512) 346–5688<br>Facsimile:  (512) 719–4362<br>tkelly@carlsonattorneys.com |
| THE WALGREEN COMPANY, INC.<br>and<br>SARA ELIZABETH MCGUIRE<br>*Appellees* | CYNTHIA DAY GRIMES<br>State Bar No. 11436600<br>Cynthia.Grimes@strasburger.com<br>STRASBURGER & PRICE, LLP<br>2301 Broadway<br>San Antonio, Texas 78215<br>(210) 250-6003 Telephone<br>(210) 258-2706 Facsimile<br>*Trial Counsel*<br><br>JUDITH R. BLAKEWAY<br>State Bar No. 02434400<br>judith.blakeway@strasburger.com<br>CYNTHIA DAY GRIMES<br>State Bar No. 11436600<br>Cynthia.Grimes@strasburger.com<br>STRASBURGER & PRICE, LLP<br>2301 Broadway<br>San Antonio, Texas 78215<br>(210) 250-6003 Telephone<br>(210) 258-2706 Facsimile<br>*Appellate Counsel* |

ii

VIVEK GOSWAMI, M.D. and
AUSTIN HEART, PLLC
    *Defendants (not parties to this appeal)*

Chris Knudsen
State Bar No. 24041268
cknudsen@serpejones.com
nandrews@serpejones.com
Nicole Andrews
State Bar No. 00792335
SERPE JONES ANDREWS
CALLENDER & BELL, PLLC
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
(713) 452–4400 Telephone
(713) 452–4499 Facsimile

ST. DAVID'S HEALTH CARE
PARTNERSHIP
    *Defendant (not a party to this appeal)*

Missy Atwood
State Bar No. 01428020
GERMER, BEAMAN & BROWN, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472–0288 Telephone
(512) 472–0721 Facsimile
matwood@germer-austin.com

1751449.6/SPSA/87282/0138/030615

# Table of Contents

Identity of Parties and Counsel ........................................................... ii

Table of Contents .......................................................................... iv

Table of Authorities ...................................................................... vi

Statement of the Case ..................................................................... 1

Issue Presented ........................................................................... 1

    Did the trial court abuse its discretion in dismissing Plaintiff's claims against Walgreen and McGuire? ..................................................... 1

Statement of Facts ........................................................................ 1

Summary of Argument ....................................................................... 4

Standard of Review ........................................................................ 6

Argument .................................................................................. 8

    I.    A Chapter 74 report must be from a qualified expert and address in non–conclusory terms the standard of care, breach and causation. ................................................................... 8

    II.   The trial court did not abuse its discretion in dismissing claims against Walgreen and McGuire. ........................................... 9

        A.    Mr. Hardy's report is deficient ..................................... 9

            1.    Mr. Hardy's opinion is speculative and conclusory. ......... 9

            2.    Mr. Hardy is statutorily disqualified from addressing causation. ........................................ 11

            3.    Mr. Hardy's report fails to distinguish between multiple defendants ....................................... 13

            4.    Mr. Hardy is not qualified as a practicing pharmacist. .......................................... 14

1751449.6/SPSA/87282/0138/030615

    B.    Dr. Breall's expert report is deficient. .......................................15

        1.    Dr. Breall's report does not even mention Walgreen or McGuire. ...............................................16

        2.    Dr. Breall's report is speculative and conclusory. ..........17

        3.    Dr. Breall is not qualified to testify to the standard of care for a pharmacy or pharmacist. ...........................19

Conclusion .................................................................................................19

Certificate of Service ................................................................................21

Certificate of Compliance .........................................................................21

Appendix ....................................................................................................22

    1.    Order dated December 3, 2014 ..........................................22

    2.    Mr. Hardy's CV and report .................................................22

    3.    Dr. Breall's CV and report ..................................................22

    4.    TEX. CIV. PRAC. & REM. CODE §74.351 ..............................22

    5.    TEX. CIV. PRAC. & REM. CODE §74.402 ..............................22

1751449.6/SPSA/87282/0138/030615

# Table of Authorities

**Page(s)**

**CASES**

*American Transitional Care Centers of Texas Inc. v. Palacios*,
46 S.W.3d 873 (Tex. 2001)......................................................................6, 7, 8, 9

*Apodaca v. Russo*,
228 S.W.3d 252 (Tex. App.–Austin 2007, no pet.)...........................................17

*Austin Heart, P.A. v. Webb*,
228 S.W.3d 276 (Tex. App.–Austin 2007, no pet.)..............................13, 14, 17

*Austin Regional Clinic v. Power*,
2012 Tex. App. LEXIS 5242 (Austin 2012, no pet.)..........................................17

*Bogar v. Esparza*,
257 S.W.3d 354 (Tex. App.–Austin 2008, no pet.)...........................................17

*Bowie Mem'l Hosp. v. Wright*,
79 S.W.3d 48 (Tex. 2002)..........................................................7, 9, 12, 13, 18

*Broders v. Heise*,
924 S.W.2d 148 (Tex. 1996) .............................................................................15

*Constancio v. Bray*,
266 S.W.3d 149 (Tex. App.–Austin 2008, no pet.)...........................................18

*Cooper v. Arizpe*,
No. 04–07–00743, 2008 Tex. App. LEXIS 2506 (Tex. App.–San
Antonio, April. 9, 2008, pet. denied)..................................................................10

*Doades v. Syed*,
94 S.W.3d 664 (Tex. App.–San Antonio 2002, no pet.) ....................................13

*Estate of Allen v. Polly Ryon Hosp. Auth.*,
No. 01–04–00151–CV, 2005 Tex. App. LEXIS 1691 (Tex. App.–
Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem. op.) ......................................12

*Fung v. Fischer*,
365 S.W.3d 507 (Tex. App.–Austin 2012), *overruled in part by Certified
EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013) ........................................10, 16

1751449.6/SPSA/87282/0138/030615

*Jelinek v. Casas*,
    328 S.W.3d 526 (Tex. 2010) ...............................................................7

*Jernigan v. Langley*,
    195 S.W.3d 91 (Tex. 2006)..........................................................6, 7, 9

*Kocerek v. Colby*,
    No. 03–13–0057–CV, 2014 Tex. App. LEXIS 9336 (Tex. App.–Austin
    2014, no pet.) ...................................................................................18

*Lenger v. Physician's Gen. Hosp.*,
    455 S.W.2d 703 (Tex. 1970) ..............................................................12

*McMenemy v. Holden*,
    No. 14–07–00365–CV, 2007 Tex. App. LEXIS 8830 (Tex. App.–
    Houston [14th Dist.] Nov. 1, 2007, pet. denied) (mem. op.).............12

*Murphy v. Mendoza*,
    234 S.W.3d 23 (Tex. App.–El Paso 2007, no pet.) ...........................11

*Perez v. Daughters of Charity Health Servs. of Austin*,
    No. 03–08–00200–CV, 2008 WL 4531558 (Tex. App.–Austin, Oct. 10,
    2008, no pet.) (mem. op.)..................................................................18

*Reddy v. Hebner*,
    435 S.W.3d 323 (Tex. App.–Austin 2014, pet. filed) .......................16

*Rittmer v. Garza*,
    65 S.W.3d 718 (Tex. App.–Houston [14th Dist.] 2001, no pet.) .......13

*Samlowski v. Wooten*,
    332 S.W.3d 404 (Tex. 2011) .............................................................7, 9

*Scoresby v. Santillan*,
    346 S.W.3d 546 (Tex. 2011) ................................................................9

*Smith v. Wilson*,
    368 S.W.3d 574 (Tex. App.–Austin 2012, no pet.).......................7, 18

*Taylor v. Christus Spohn Health Sys. Corp.*,
    169 S.W.3d 241 (Tex. App.–Corpus Christi 2004, no pet.)..............14

1751449.6/SPSA/87282/0138/030615

*Tenet Hospitals Ltd. v. De La Riva*,
   351 S.W.3d 398 (Tex. App.–El Paso 2011, no pet.) ...........................................14

*Walgreen Co. v. Hieger*,
   243 S.W.3d 183 (Tex. App.–Houston [14th Dist.] 2007, pet. denied)...............12

*Walker v. Gutierrez*,
   111 S.W.3d 56 (Tex. 2003)..................................................................................7

**STATUTES**

TEX. CIV. PRAC. & REM. CODE 74.001(a)(10).............................................................15

TEX. CIV. PRAC. & REM. CODE § 74.351 .....................................................................8

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i)......................................................16

TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) ....................................................13, 18

TEX. CIV. PRAC. & REM. CODE § 74.402 ...................................................................19

TEX. CIV. PRAC. & REM. CODE § 74.402(b)(1)–(3)...................................................14

TEX. CIV. PRAC. & REM. CODE § 74.402(c) ...............................................................15

TEX. CIV. PRAC. & REM. CODE § 74.403(a)................................................................11

1751449.6/SPSA/87282/0138/030615

## Statement of the Case

This is an interlocutory appeal from an order dismissing a health care liability claim against Walgreen and its pharmacist McGuire for failure to serve adequate expert reports. Ms. Rodriguez claims that the district court abused its discretion in concluding that she failed to serve expert reports that comply with Chapter 74 of the Texas Civil Practice and Remedies Code.

## Issue Presented

**Did the trial court abuse its discretion in dismissing Plaintiff's claims against Walgreen and McGuire?**

## Statement of Facts

Ms. Rodriguez sued her cardiologist, Dr. Goswami, Walgreen and its pharmacist, McGuire, claiming that Defendants were negligent because after Dr. Kessler (who was in the same group as Dr. Goswami) advised that Pradaxa be discontinued, Walgreen continued to fill a prescription previously issued by Dr. Goswami. C.R. 6. Dr. Goswami issued the prescription on February 14, 2012, C.R. 335, with a prescription refill on March 16, 2012. C.R. 336. Ms. Rodriguez alleged that continued use of Pradaxa caused her to be admitted to the hospital with hypertension, acute kidney injury and gastrointestinal bleeding. C.R. 6. In support of her claim, she served reports from Jeffrey Hardy, Pharm. D., M.S., C.R. 39–42, and Dr. Jeffrey Breall, a professor of clinical medicine. C.R. 43–44.

Mr. Hardy opined that Walgreen, McGuire and a pharmacist with the initials MDD breached the applicable standard of care because (1) they failed to verify whether the prescription previously written by Dr. Goswami for Pradaxa should be continued and (2) dispensed a prescription for Pradaxa after Dr. Kessler indicated that it be discontinued.

His report stated:

Standards of Care

The standard of care required to fill Ms. Rodriguez's dabigatran etexilate (PRADAXA) prescription are as follows:

- Pharmacists have a duty to contact the prescribing physician if patient harm is possible to validate the prescription
- Pharmacists are responsible for ensuring a prescription is accurately communicated and dispensed as intended by the prescriber
- Pharmacists are responsible for communicating with the prescribing physician to validate continuation of therapy when no refills remain on a prescription

Breach of Standard of Care

Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD breached the applicable standards of care. Specifically, Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD conduct fell below the standard of care by:

- Continuing to dispense a prescription for dabigatran etexilate (PRADAXA) after the prescribing physician indicated it should be discontinued; and

- Failing to verify if the prescription for dabigatran etexilate (PRADAXA) should be continued with the prescribing physician

Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD should have provided Ms. Rodriguez with the care and treatment in the standard of care paragraph above. However, this expected care was not provided to Ms. Rodriguez as set forth in the preceding paragraph.

C.R. 40–41.

Plaintiff did not offer Mr. Hardy's opinion as to causation, but instead relied on the report of Dr. Breall. C.R. 359; R.R. 32. Dr. Breall's report did not mention Walgreen or McGuire; it was instead directed solely to the conduct of Dr. Goswami. C.R. 44. Dr. Breall stated the following about causation:

Failure to discontinue the use of Pradaxa was a direct cause of her subsequent acute admission to the hospital with hypotension, acute kidney injury and apparent gastrointestinal bleeding – known side effects of the over–use of Pradaxa. Ms. Rodriguez's entire hospitalization was attributable to the failure to stop Pradaxa therapy as ordered by Dr. Kessler. More likely than not, had the Pradaxa medication been discontinued as requested, Ms. Rodriguez's hospitalization would never have needed to take place.

C.R. 44.

Walgreen and McGuire objected to both reports, C.R. 64–74, and moved to dismiss. C.R. 212–20. The trial court granted their motion. C.R. 375–76. Ms. Rodriguez appeals. Supp. C.R. 3–4.

## Summary of Argument

The trial court did not abuse its discretion in dismissing Ms. Rodriguez's claims against Walgreen and McGuire. Her experts were not shown to be qualified and their reports failed to implicate Walgreen or its pharmacists. Neither expert provided a factual basis for his opinions. Both reports were based on the unstated assumption that Walgreen and McGuire knew Dr. Kessler had instructed Ms. Rodriguez to discontinue Pradaxa. Even when read together, there was no report that implicated the conduct of Walgreen or its pharmacists because Mr. Hardy was incompetent to render a report as to causation and Dr. Breall never even mentioned Walgreen or McGuire in his report. The trial court's dismissal should be affirmed.

The trial court did not abuse its discretion in finding Mr. Hardy's report deficient. First, his report is conclusory —he fails to provide any facts to support his conclusion about why Walgreen and its pharmacists failed to meet the standard of care. He does not recite any facts about the date of Dr. Kessler's advice to stop Pradaxa, to whom the instruction may have been communicated, whether Walgreen or its pharmacists ever had any notice of the advice, the circumstances under which Walgreen continued to refill her Pradaxa prescription, or any other relevant facts. If Walgreen received the prescription written by Dr. Goswami, C.R. 335, and the five refills of Pradaxa, C.R. 336, and was not aware of Dr. Kessler's subsequent indication to stop using Pradaxa, there would be no

reason for Walgreen to refuse to refill her prescription using the prescription it had on file. Nevertheless, Mr. Hardy's report does not even mention the fact that Walgreen had a prescription refill that predated the hospital admission during which Dr. Kessler said to stop Pradaxa. Nor does it mention whether Walgreen or McGuire were ever informed of Dr. Kessler's instruction.

Second, Mr. Hardy was statutorily disqualified from testifying to causation. Ms. Rodriguez concedes that Mr. Hardy was unqualified to render an opinion regarding causation; only a physician may render opinions regarding causation. Nevertheless, Ms. Rodriguez asserts that when Mr. Hardy's report is read in conjunction with Dr. Breall's report, the causation requirement is satisfied. While it is true that the expert report requirement may be satisfied by utilizing more than one expert report, Dr. Breall's report does not supply the missing causation. Dr. Breall's report does not even mention Walgreen or its pharmacists much less identify any conduct, act or omission attributable to them.

Third, when a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's acts and the plaintiff's injury. A claimant must provide each defendant with an expert report that sets forth the manner in which the care rendered by that defendant failed to meet the standard of care and

the causal relationship between that failure and the injuries claimed. This Mr. Hardy and Dr. Breall failed to do.

Fourth, Mr. Hardy was not qualified. There is nothing in the four corners of his report to indicate that he was a practicing pharmacist filling prescriptions at the time the claim arose or when he made his report.

The trial court did not abuse its discretion in finding that Dr. Breall's report does not bridge the gaps in Mr. Hardy's report. First, his report does not even mention Walgreen or McGuire much less recite any facts that Walgreen's pharmacists were on notice of Dr. Kessler's instruction. Second, his report is speculative and conclusory on the issue of causation. It fails to identify the prescription used by Ms. Rodriguez after Dr. Kessler said to stop using Pradaxa, the circumstances under which Walgreen continued to refill the prescription, or how doing so contributed to Ms. Rodriguez's injury. Third, Dr. Breall is not qualified to testify to the standard of care for a pharmacist.

The trial court's dismissal should be affirmed.

## Standard of Review

A trial court's rulings on motions to dismiss health care liability claims are reviewed for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *American Transitional Care Centers of Texas Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion by rendering an

arbitrary and unreasonable decision lacking support in the facts or circumstances of the case or by acting in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (plurality op.) When reviewing matters committed to the trial court's discretion, an appellate court may not substitute its own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Id.*; *see also Jelinek v. Casas*, 328 S.W.3d 526, 542 (Tex. 2010) (Jefferson, C.J., dissenting) ("The dividing line between a sufficient and an inadequate report is impossible to draw precisely. We have said, therefore, that the determination must be made in the first instance by the trial court, and review of that decision asks not how an appellate court would have resolved that issue, but instead whether the trial court abused its discretion.") (citing *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003)). But if an expert report contains only conclusions about the statutory elements, a trial court has "no discretion but to conclude . . . that the report does not represent a good–faith effort" to satisfy the statute. *Palacios*, 46 S.W.3d at 877, 880; *Smith v. Wilson*, 368 S.W.3d 574 (Tex. App.–Austin 2012, no pet.).

## Argument

**I.    A Chapter 74 report must be from a qualified expert and address in non–conclusory terms the standard of care, breach and causation.**

Pursuant to Section 74.351, medical–malpractice plaintiffs must provide each defendant health care provider with an expert report or voluntarily nonsuit the action. TEX. CIV. PRAC. & REM. CODE §74.351. If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy. *Id.* The trial court shall grant the motion only if it appears, after hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See id.* §74.351(l). The statute defines an expert report as a written report by an expert that provides, as to each defendant, a fair summary of the expert's opinions, as of the date of the report, regarding: (1) the applicable standards of care; (2) the manner in which the care provided failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See id.* §74.351(r)(6).

Although the report need not marshal all the plaintiff's proof, it must include the expert's opinions on the three statutory elements—standard of care, breach and causation. *See Palacios,* 46 S.W.3d at 878. In detailing these elements, the report must provide enough information to fulfill two purposes: first, it must inform the defendant of the specific conduct the plaintiff has called into question, and, second, it must provide a basis for the trial court to conclude that the claims have merit.

*Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (citing *Palacios*, 46 S.W.3d at 879). A report that merely states the expert's conclusions as to the standard of care, breach, and causation does not fulfill these two purposes. *Id.* A report that omits one or more of these required elements, or states the expert's opinions as merely conclusions without supporting facts, is insufficient to constitute a "good faith effort" at compliance with Chapter 74. *See Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011); *Jernigan v. Langley*, 195 S.W.3d 91, 93–94 (Tex. 2006) (affirming trial court's dismissal of suit because expert reports omitted any allegation about how doctor breached standard of care and causation); *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. ("[T]he expert must explain the basis of his statements and link his conclusions to the facts.") Furthermore, in assessing a report's sufficiency, a trial court may not draw any inferences, and instead must rely exclusively on the information contained within the report's four corners. *See Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (citing *Palacios*, 46 S.W.3d at 878).

## II. The trial court did not abuse its discretion in dismissing claims against Walgreen and McGuire.

### A. Mr. Hardy's report is deficient.

#### 1. Mr. Hardy's opinion is speculative and conclusory.

Mr. Hardy's report is speculative because it relies on the assumption that Walgreen and McGuire were aware of Dr. Kessler's advice to discontinue the use

of Pradaxa. It fails to make a causal link between an allegedly breached standard of care and injury by requiring an inference that if Walgreen and McGuire had known of Dr. Kessler's advice, then Ms. Rodriguez's outcome would have been different. His opinions all hinge on Walgreen and McGuire knowing of Dr. Kessler's advice. Yet there is nothing in Mr. Hardy's report that affirmatively shows that Walgreen and McGuire were aware of the information that is identified as key to their liability. Any breach of the standard of care discussed in Mr. Hardy's report is entirely dependent on what Defendants knew and when. Yet Mr. Hardy's report is silent on these crucial facts. Further, Mr. Hardy's report says Walgreen should have contacted the prescribing physician—Dr. Goswami. But there is no indication that at that time Dr. Goswami even knew of Dr. Kessler's advice or would have communicated it to Walgreen or McGuire.

By relying on assumptions instead of facts, the report provides no basis for a trial court to conclude that the claims against Defendants have merit. *Fung v. Fischer*, 365 S.W.3d 507, 533 (Tex. App.–Austin 2012), *overruled in part by Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013) (finding that report that depended on unsupported assumptions about what a defendant knew and when he knew it was speculative); *Cooper v. Arizpe*, No. 04–07–00743, 2008 Tex. App. LEXIS 2506 at *9–10 (Tex. App.–San Antonio, April. 9, 2008, pet. denied) (holding that report that relied on assumption that notes were in chart was

conclusory and speculative); *Murphy v. Mendoza*, 234 S.W.3d 23, 28 (Tex. App.–El Paso 2007, no pet.) (holding that expert's opinion as to breach of the standard of care was speculative and conclusory as it was unsupported by facts in report's four corners and relied on assumption).

Mr. Hardy's opinions regarding Walgreen's negligence, breach of the standard of care, and causation—which depend on unsupported assumptions as to what Walgreen and McGuire knew and when they knew it—are conclusory and speculative at best. They do not provide a basis for the court to conclude that Ms. Rodriguez's healthcare liability claim against Walgreen and McGuire has merit.

### 2. Mr. Hardy is statutorily disqualified from addressing causation.

Mr. Hardy, Pharm. D., M.S., is a pharmacist and not a medical doctor. Only a physician can render an opinion on causation. TEX. CIV. PRAC. & REM. CODE §74.403(a). Therefore, Mr. Hardy, by statute, cannot render an opinion on causation.

Moreover, Mr. Hardy's statement of causation is entirely conclusory in that it fails to explain the relationship between the alleged injuries and the failure to act according to the standard of care. He simply states "…It is clear that the long-term use of dabigatran etexilate (Pradaxa) as dispensed by Walgreens and Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD caused

Ms. Rodriguez's acute kidney injury, anemia, and gastrointestinal bleeding (which have led to her long-term clinical demise and medical injuries)." C.R. 42.

The causal connection in healthcare malpractice suits must be made "beyond the point of conjecture" and "must show more than a possibility" to warrant submission of the issue to a jury. *Lenger v. Physician's Gen. Hosp.*, 455 S.W.2d 703, 706 (Tex. 1970); *see Bowie Mem'l Hosp.*, 79 S.W.3d at 53. Reports providing a "description of only a possibility of causation do not constitute a good–faith effort to comply with the statute." *Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186–87 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (holding that expert report stating claimant had symptoms "consistent with" known side effects of medication was insufficient to demonstrate causal link); *see McMenemy v. Holden*, No. 14–07–00365–CV, 2007 Tex. App. LEXIS 8830, at *15–16 (Tex. App.–Houston [14th Dist.] Nov. 1, 2007, pet. denied) (mem. op.) (concluding that expert's report expressing uncertainty about possibility of positive outcome for patient failed to make causal link indicating plaintiffs' claim had merit); *Estate of Allen v. Polly Ryon Hosp. Auth.*, No. 01–04–00151–CV, 2005 Tex. App. LEXIS 1691, at *16–17 (Tex. App.–Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem. op.) (holding that expert's report failed to meet statutory causation requirement by opining merely that breach of standard of care "could have contributed" to decline in claimant's condition).

Further, a court may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.–Austin 2007, no pet.). Instead, the report must include the required information within its four corners. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53. This Mr. Hardy's report fails to do. The trial court thus did not abuse its discretion in finding it inadequate.

### 3. Mr. Hardy's report fails to distinguish between multiple defendants.

Also, Mr. Hardy's report does not separately set out the alleged acts of negligence and causal connection for each of the multiple defendants. When a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See* TEX. CIV. PRAC. & REM. CODE §74.351(r)(6) (a claimant must provide each defendant with an expert report that sets forth the manner in which the care rendered failed to meet the standard of care and the causal relationship between that failure and the injuries claimed); *Doades v. Syed*, 94 S.W.3d 664, 671-72 (Tex. App.–San Antonio 2002, no pet.); *Rittmer v. Garza*, 65 S.W.3d 718, 722-23 (Tex. App.–Houston [14th Dist.] 2001, no pet.).

An expert report may not assert that multiple defendants are all negligent for failing to meet the standard of care without providing an explanation of how each defendant breached the standard of care and how that breach caused or contributed

to cause the injury. *Austin Heart*, 228 S.W.3d at 282-83 (finding deficient expert report that was "silent as to whether a single physician, multiple physicians, or all physicians' mentioned in the report failed to meet the standard of care and caused injury to [the patient]"); *Tenet Hospitals Ltd. v. De La Riva*, 351 S.W.3d 398 (Tex. App.–El Paso 2011, no pet.) (finding deficient expert report that failed to state who among multiple defendants caused the injuries); *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 245–46 (Tex. App.–Corpus Christi 2004, no pet.) (finding deficient expert report that failed "to state what each defendant should have done in order to meet the standard of care, what each defendant failed to do, and how such failure led to [the patient's] death").

Because Mr. Hardy's report does not explain what conduct, act or omissions are attributable to which of the defendants, it is deficient, and the trial court did not abuse its discretion in finding it did not satisfy the statutory requirements.

### 4. Mr. Hardy is not qualified as a practicing pharmacist.

A person may qualify as an expert witness on whether a health care provider departed from accepted standards of care only if, at the time the claim arose or at the time the testimony is given, he is practicing the same type of care or treatment as the defendant, and is qualified by training or experience. TEX. CIV. PRAC. & REM. CODE §74.402(b)(1)–(3). In determining whether a witness is qualified, a court considers whether the witness (1) is certified by the licensing agency, and

(2) is actively practicing health care in rendering health care services relevant to the claim. TEX. CIV. PRAC. & REM. CODE §74.402(c). "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE 74.001(a)(10). A plaintiff offering medical testimony must establish that the expert has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). The analysis focuses on "the very matter" on which the expert is to give an opinion. *Id.*

Here, there is no showing in the four corners of his report that Mr. Hardy is practicing and rendering health care in "the very matter" on which he is giving an opinion. Mr. Hardy's CV shows only that he is involved in pharmacy "information technology." There is no showing that he was, at the pertinent times, filling prescriptions for patients. Nothing in the four corners of Mr. Hardy's report indicates that he is qualified to opine on the standard of care, breach or causation.

## B.     Dr. Breall's expert report is deficient.

Conceding that Mr. Hardy is prohibited by statute from stating any opinions on causation, Ms. Rodriguez still asserts that when Mr. Hardy's report is read in conjunction with the report provided by Dr. Breall, causation is found. While it is

true that the expert report requirement may be satisfied by utilizing more than one expert report, and thus, a court may read those reports together to supply missing elements, *see* TEX. CIV. PRAC. & REM. CODE ANN. §74.351(i), Dr. Breall's report does not supply the missing causation.

### 1. Dr. Breall's report does not even mention Walgreen or McGuire.

Dr. Breall does not mention Walgreen or McGuire, does not discuss any standard of care pertaining to Walgreen or McGuire, and does not discuss any causal connection between anything done or failed to be done by Walgreen or McGuire and the injuries sustained by Ms. Rodriguez. In fact, the report does not mention Walgreen or McGuire at all; instead, the report discusses only Dr. Goswami. His report thus does not constitute an expert report as required to maintain a suit against Walgreen and McGuire. Accordingly, the trial court was correct to grant the motion to dismiss.

When a defendant is not identified within the four corners of a report, the report is, for that reason alone, deficient as to that defendant because it requires the reader to infer or make an educated guess as to whose actions caused the injuries. *See Reddy v. Hebner*, 435 S.W.3d 323, 328 (Tex. App.–Austin 2014, pet. filed) (finding report that did not mention doctor or discuss how doctor's treatment did not meet the standard of care, did not constitute a good-faith effort to comply with the statutory requirements); *Fung v. Fischer*, 365 S.W.3d 507, 529 (Tex. App.–

Austin 2012, no pet.) *overruled on other grounds by Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013) (concluding that report did not implicate defendant when it did not allege breach by defendant or any causal link between defendant's breach and injury); *Austin Regional Clinic v. Power*, 2012 Tex. App. LEXIS 5242 (Austin 2012, no pet.) (concluding that trial court abused its discretion by denying motion to dismiss claims against certain defendant when the expert report did not mention that defendant); *see also Bogar v. Esparza*, 257 S.W.3d 354, 363 (Tex. App.–Austin 2008, no pet.); *Austin Heart P.A. v. Webb*, 228 S.W.3d 276, 281 (Tex. App.–Austin 2007, no pet.); *Apodaca v. Russo*, 228 S.W.3d 252, 257-58 (Tex. App.–Austin 2007, no pet.). Dr. Breall's report falls below the minimal standard and thus does not constitute an expert report as required to maintain a suit against Walgreen and McGuire.

### 2. Dr. Breall's report is speculative and conclusory.

Like Mr. Hardy's, Dr. Breall's report would have to be based on the assumption that Walgreen and McGuire—although they are never mentioned—knew about Dr. Kessler's advice to stop Pradaxa. But there is nothing in his report about to whom the advice was communicated, whether the prescription that was used by Ms. Rodriguez predated the advice, or any other circumstances under which Ms. Rodriguez continued to refill her prescription. Dr. Breall simply does not provide facts to establish the causal link between Walgreen's alleged breach

and Ms. Rodriguez's injuries, one of the required statutory elements of an expert report. *See* TEX. CIV. PRAC. & REM. CODE §74.351(r)(6). "To avoid being conclusory, an expert must explain the basis of the statements to link his conclusions to the facts." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

This Court has consistently required more than what Dr. Breall has provided in terms of expert testimony on causation. *See Kocerek v. Colby*, No. 03–13–0057–CV, 2014 Tex. App. LEXIS 9336 (Tex. App.–Austin 2014, no pet.)(holding insufficient expert report that failed to show specific actions defendant did or did not take would have prevented patient's injuries); *Smith v. Wilson*, 368 S.W.3d 574, 578 (Tex. App.–Austin 2012, no pet.)(holding that expert failed to show how doctor's alleged breach of standard of care caused patient to commit suicide); *Constancio v. Bray*, 266 S.W.3d 149, 157–58 (Tex. App.–Austin 2008, no pet.) (holding insufficient expert report that alleged that breach of standard of care by doctor caused patient's death when report did not explain how increased monitoring of patient, detection of hypoxemia, and other consequence would have prevented patient's death); *Perez v. Daughters of Charity Health Servs. of Austin*, No. 03–08–00200–CV, 2008 WL 4531558, at *4 (Tex. App.–Austin, Oct. 10, 2008, no pet.) (mem. op.) (concluding expert report insufficient on causation because it did not link hospital's actions to patient's death or any cause of death

and did not identify any specific injury that would have been prevented had hospital complied with standard of care). To find Dr. Breall's report sufficient on causation, the trial court would have had to make inferences beyond the four corners of his report, which it could not do. For this additional reason, the trial court was correct to grant the motion to dismiss.

### 3. Dr. Breall is not qualified to testify to the standard of care for a pharmacy or pharmacist.

An expert report must demonstrate within the four corners of the report that the purported expert is qualified to testify about the particular matters for which the opinion is offered. TEX. CIV. PRAC. & REM. CODE §74.351, 74.402. Dr. Breall is not a pharmacist qualified on the basis of training or experience to offer an expert report regarding accepted standards for a pharmacy or pharmacist. Because he is not qualified to give opinions as to the standard of care, he cannot connect any breaches of the standard of care with the damages claimed. Therefore, the Court's dismissal of Ms. Rodriguez's claims against Walgreen and McGuire was correct.

### CONCLUSION

The trial court was correct in dismissing the claims against Walgreen and McGuire. Its order should be affirmed.

Respectfully submitted,

*/s/ Judith R. Blakeway*
JUDITH R. BLAKEWAY
State Bar No. 02434400
judith.blakeway@strasburger.com
CYNTHIA DAY GRIMES
State Bar No. 11436600
Cynthia.Grimes@strasburger.com
STRASBURGER & PRICE, LLP
2301 Broadway
San Antonio, Texas 78215
(210) 250-6003 Telephone
(210) 258-2706 Facsimile

**ATTORNEYS FOR APPELLEES**
**THE WALGREEN COMPANY AND**
**SARA ELIZABETH MCGUIRE**

## CERTIFICATE OF SERVICE

Pursuant to E-Filing Standing Order, I certify that on March 6, 2015, I electronically filed the foregoing with the Clerk of Court using the EFile.TXCourts.gov electronic filing system which will send notification of such filing to the following:

Lannie Todd Kelly
State Bar No. 24035049
THE CARLSON LAW FIRM, P.C.
11606 N. IH–35
Austin, TX 78753
Telephone:   (512) 346–5688
Facsimile:    (512) 719–4362
tkelly@carlsonattorneys.com
*Attorneys for Appellant Nancy Jo Rodriguez*

*/s/ Judith R. Blakeway*
JUDITH R. BLAKEWAY

## CERTIFICATE OF COMPLIANCE

In accordance with Tex. R. App. P. 9.4(i)(1), I hereby certify that this Brief of Appellees contains no more than 4,460 words.

*/s/ Judith R. Blakeway*
JUDITH R. BLAKEWAY

1751449.6/SPSA/87282/0138/030615

NO. 03–14–00765–CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

NANCY JO RODRIGUEZ

APPELLANT,

V.

THE WALGREEN COMPANY AND SARA ELIZABETH MCGUIRE

APPELLEES.

On Appeal from the 419th District Court
Travis County, Texas

**APPENDIX**

1.    Order dated December 3, 2014

2.    Mr. Hardy's CV and report

3.    Dr. Breall's CV and report

4.    TEX. CIV. PRAC. & REM. CODE §74.351

5.    TEX. CIV. PRAC. & REM. CODE §74.402



APPENDIX 1

Filed in The District Court
of Travis County, Texas

DEC 03 2014 /V~

At____|:<T>____p·__M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-000903

| | | |
|---|---|---|
| NANCY JO RODRIGUEZ | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| vs. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| THE WALGREEN COMPANY, SARA | § | |
| ELIZABETH MCGUIRE, AUSTIN HEART | § | |
| PLLC, ST. DAVID'S HEALTH CARE | § | |
| PARTNERSHIP, DAVID KESSLER, MD, | § | |
| AND VIVEK GOSWAMI, MD | § | |
| | § | |
| DEFENDANT. | § | 419TH JUDICIAL DISTRICT |
| | § | |

## ORDER

On the 29th of October, 2014, the Court considered the Chapter 74 Motion to Dismiss and for Attorneys' Fees filed by Walgreen Co. and Sara Elizabeth McGuire. After considering the motion, any responses thereto, arguments of counsel, and all other relevant matters of record, the Court is of the opinion that the motion is meritorious and should be GRANTED IN PART and DENIED IN PART. It is therefore,

ORDERED that Walgreen Co. and Sara Elizabeth McGuire's Chapter 74 Motion to Dismiss is granted. It is therefore,

ORDERED that all of Plaintiff Nancy Jo Rodriguez' claims and causes of action, as well as those that could have been asserted, against Walgreen Co. and Sara Elizabeth McGuire are hereby dismissed with prejudice. It is further,

ORDERED that Walgreen Co. and Sara Elizabeth McGuire's request for attorneys' fees is DENIED.

All other relief not granted herein with respect to the the Chapter 74 Motion to Dismiss and for Attorneys' Fees filed by Walgreen Co. and Sara Elizabeth McGuire is Denied.

1632631.1/SPSA/87282/0138/110614

Signed this _3_ ~~NOVEMBER~~ *December,* 2014.

HONORABLE GUS J. STRAUSS
PRESIDING JUDGE

**APPROVED AS TO FORM:**

CYNTHIA DAY GRIMES
State Bar No. 11436600
**STRASBURGER & PRICE, LLP**
2301 Broadway
San Antonio, Texas 78215-1157
(210) 250-6000 – Main
(210) 250-6100 – Fax
(210) 250-6003 – Direct
Cynthia.Grimes@strasburger.com
*Attorneys for Defendants Walgreen Co. and Sara Elizabeth McGuire*

L. TODD KELLY
State Bar No. 24035049
ELIZABETH A. RHODES
State Bar No. 24083726
**THE CARLSON LAW FIRM, PC**
11606 N. IH 35
Austin, Texas 78753
(512) 346-5688 – Telephone
(512) 719-4362 – Fax
tkelly@carlsonattorneys.com
erhodes@carlsonattorneys.com
*Attorneys for Plaintiff*

1632631.4/SPSA/87282/0138/110614

Signed this _____ NOVEMBER, 2014.


_____
HONORABLE GUS J. STRAUSS
PRESIDING JUDGE



APPROVED AS TO FORM:



_____
CYNTHIA DAY GRIMES
State Bar No. 11436600
STRASBURGER & PRICE, LLP
2301 Broadway
San Antonio, Texas 78215-1157
(210) 250-6000 – Main
(210) 250-6100 – Fax
(210) 250-6003 – Direct
Cynthia.Grimes@strasburger.com
*Attorneys for Defendants Walgreen Co. and Sara Elizabeth McGuire*


_____
L. TODD KELLY
State Bar No. 24035049
ELIZABETH A. RHODES
State Bar No. 24083726
THE CARLSON LAW FIRM, PC
11606 N. IH 35
Austin, Texas 78753
(512) 346-5688 – Telephone
(512) 719-4362 – Fax
tkelly@carlsonattorneys.com
erhodes@carlsonattorneys.com
*Attorneys for Plaintiff*



1632631.4/SPSA/R72R2/0138/110614

NICOLE G. ANDREWS
State Bar No. 00792335
MARGARET GARIB
State Bar No. 24072108
SERPE JONE ANDREWS CALLENDER & BELL, PLLC
America Tower
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
mgarib@serpejones.com
nandrews@serpejones.com
*Attorneys for Defendants Austin Heart, PLLC, David Kessler, MD
And Vivek Goswami, MD*


MISSY ATWOOD
State Bar No. 01428020
R. CHAD GEISLER
State Bar No. 00793793
GERMER BEAMAN & BROWN, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 – Main
(512) 472-9280 – Fax
(512) 482-5171 – Direct
matwood@germer-austin.com
*Attorneys for Defendant St. David's Health Care Partnership*

NICOLE G. ANDREWS
State Bar No. 00792335
MARGARET GARIB
State Bar No. 24072108
SERPE JONE ANDREWS CALLENDER & BELL, PLLC
America Tower
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
mgarib@serpejones.com
nandrews@serpejones.com
*Attorneys for Defendants Austin Heart, PLLC, David Kessler, MD
And Vivek Goswami, MD*

MISSY ATWOOD
State Bar No. 01428020
R. CHAD GEISLER
State Bar No. 00793793
GERMER BEAMAN & BROWN, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 – Main
(512) 472-9280 – Fax
(512) 482-5171 – Direct
matwood@germer-austin.com
*Attorneys for Defendant St. David's Health Care Partnership*

1632631.4/SPSA/87282/0138/110614

APPENDIX 2



**62 W. Tapestry Park Cr• The Woodlands, TX 77381**
**Phone: 281.352.3038 • Fax: 281.203.0876 • E-Mail: chad@rxpointconsulting.com**

## Summary

An experienced healthcare information solutions and pharmacy operations manager. Experience in implementation and management of healthcare information technologies and operational practices in military and private sectors. Demonstrated accomplishment managing and implementing clinical policies and procedures in healthcare systems. Trained clinician and healthcare provider with experience in parenteral nutrition, neonatal, pediatric and general medicine populations. Well-organized, goal oriented professional with ability to implement standards, procedures, and processes that improve healthcare and patient safety. Proven management skills, capable of leading and motivating individuals to augment efficiency and productivity in a team oriented environment. Exceptional communicator and negotiator.

## Experience

### Pharmacy Consultant, Houston TX                    July 2011 - Present

Operations and standards consultant to some of the leading healthcare systems in the United States. Design and support expert on Medication Use tools in electronic health records. Provides experience in policy and procedure implementation. Works closely with pharmacy and healthcare leaders to optimize patient care workflows and pharmaceutical care delivery systems. Leverages knowledge of technology and pharmacy practice to solve complex clinical workflows. Expert pharmacy witness providing services to a broad range of clients in the US.

### Pharmacy Operations Management, Houston TX          Mar. 05 – Apr. 12

Responsible for direction and management of technology-related pharmacy services, including practice standards and workflows for most areas of practice. Team oriented leader of pharmacy staff members, providing assessment, implementation, support, and maintenance of healthcare systems. Operational information systems clinical content manager for both inpatient and outpatient operations . Responsible for 3 inpatient hospitals and 16 outpatient pharmacies. Works to better the department with the application of clinical knowledge to ensure proper effective and timely patient care. Involved in fiscal planning, contract negotiation, and vendor interactions. Experience with clinical medication parameters and advanced decision support for Epic Ambulatory, EpicRX, and Epic Inpatient. Represents Pharmacy on multidisciplinary project teams and initiatives. Responsible for clinical systems and process compliance with regulatory governance and The Joint Commission. Reports to Chief Pharmacy Officer. Currently serving in a consulting capacity.

### Strategic Accounts Manager, McKesson                Jul. 03 – Mar. 05

Strategic representative for healthcare automation customers. Responsible for all account activities including: finance, upgrades, technical support, engineering, sales, pharmacy practice consulting, and customer service. Regional responsibilities include Texas, Oklahoma, New Mexico, Kansas, Nevada, Wyoming, Nebraska, Minnesota, California, and Colorado. In addition, Program Manager for Department of Defense security initiatives to ensure standardization and increased security posture for all products. HIPAA Security consultant for engineering group. Pharmacy practice consultant for executive management. Responsible for managing projects involving department or cross-functional teams focused on the delivery of HIPAA and DoD approved products.



13

**Department Head, US Navy**                                    Sep. 01 – Jul. 03

Motivational and logistical leader. Responsible for clinical practice, formulary, supply, financial, and personnel management. Managed an annual operational budget of $25 million. Visionary for 3 facilities and over 40 personnel. Inpatient, outpatient, and hospital wide multifunctional officer. Accomplished healthcare IT lecturer and mentor. Command technology leader and cross-functional team champion. Recipient of Naval Medal of Commendation, 2003.

**Division Officer, US Navy**                                    Jun. 00 – Sep. 01

Managed the inpatient pharmacy operation in a 350-bed state of the art facility. Responsible for business planning, operational readiness, clinical coordination and sterile product compounding for a daily census of over 200 patients. Responsible for annual combined budget of $25 million. Manager for 38 subordinates. Automated Medication System upgrade implementation lead, totaling a $2.8 million purchase. Senior command member of JCAHO compliance team. Total Parenteral Nutrition Upgrade implementation lead, responsible for decreasing medication errors, improving efficiency, and providing pharmaceutical care to critical patients. Senior TPN Pharmacist. Credentialed in Total Parenteral Nutrition, Pharmacokinetics, and inpatient pharmacy practice. Experiential Coordinator for 6 area colleges of pharmacy and 30 students annually. Design lead for Neonatal, Chemotherapy and Discharge pharmacy satellites.

**Historical Experience**

Floater Pharmacist, Wal-Mart Stores, Virginia Beach, VA:        Aug. 00 – Sep. 03
Chief Information Officer, Drilling Technology, Dallas, TX:      Jun. 97 – May 00
Systems Analyst, Univ. of Texas at Austin, TX:                  Aug. 96 – Jun. 98
Certified Pharmacy Technician, Tom Thumb Pharmacy, TX:  Aug. 92 – Dec. 98

## Education

**Univ. of Texas at Austin, Doctorate of Pharmacy**        **2000**

**Capella University, MS in Information Technology**        **2005**

## Presentations and Publications

Clinical decision support for drug–drug interactions: Improvement needed. Am J Health Syst Pharm May 15, 2013 70:905-909.

Computerized Pharmacy Order Entry Guidelines. Am J health-Syst Pharm, published 2010.

Technology Enabled Practice: A Vision Statement by ASHP Section of Pharmacy Informatics and Technology. Am J health-Syst Pharm, 2009; 66 1573-1577.

Maximizing 340B Savings with an Automated Solution. Pharmacy Purchasing and Products, June 2009;Vol6 No 6 pg 10-12.

14

Pharmacy Information Systems. *The Pharmacy Informatics Primer*, 1st ed., Ch 4 pg. 65-76, 2008.

American Society of Health System Pharmacists (ASHP) Informatics Bytes. Midyear Meeting 2007.

Texas Society of Health System Pharmacists (TSHP) Technicians in Automation, Annual Meeting 2008.

Medication Use Technology: PHCA 6397. Lecture. University of Houston College of Pharmacy 2013.

What is Pharmacy Informatics. ASHP funded webinar, 8/23/10.

Pharmacy Informatics and Residency Opportunities, Lecture. Texas Southern University and University of Houston College of Pharmacy, 2007-2011

Nursing satisfaction with Barcoded Medication Administration, poster presentation. ASHP Summer Meeting 2009.

Moderator, Ambulatory Care Informatics Networking Session. ASHP Midyear Meeting 2009.

Moderator, Provider Order Entry Networking Session. ASHP Midyear Meeting 2008.

Moderator, Provider Order Entry Networking Session. ASHP Midyear Meeting 2007.


## Professional Involvement

ASHP Committee on Nominations 2010-present

ASHP Executive Committee, 2008-2011.

ASHP Immediate Past Chair, 2010-2011

ASHP Section of Pharmacy Informatics and Technology Chair, 2009-2010.

ASHP Chair Elect, 2008-2009.

ASHP Section of Pharmacy Informatics and Technology Advisory Group Chair, 2007-2008.

Gulf Coast Society of Health Systems Pharmacists Member at Large, 2007-2011.

15

February 21, 2014

VIA EMAIL

L. Todd Kelly
The Carlson Law Firm, P.C.
11606 North Interstate Highway 35
Austin, Texas 78753

*Re: Nancy Jo Rodriguez File Number 32-4438*

Mr. Kelly:

My name is Jeffrey Chad Hardy. I am a licensed pharmacist in the State of Texas.

I have been asked in my capacity as an expert in pharmacy operations to evaluate the conduct and actions of Walgreens Pharmacy ("Walgreens"), Sara Elizabeth McGuire (pharmacist) and pharmacist with initials MDD as it relates to the dabigatran etexilate (PRADAXA) of patient Nancy Rodriguez filled by Walgreens pharmacy on 4/26/2012 and 6/15/2012. Based on the information available to me at this time, the medication provided to Ms. Rodriguez was not authorized by her physician. Ms. Rodriguez's resulting complications and clinical demise were most likely related to the extended, unauthorized use of dabigatran etexilate (PRADAXA) and its impact on her health.

I have reviewed the information provided to me regarding the potential pharmacy malpractice case against Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD. In preparation of this report I reviewed the following documentation:

1. Insurance Profile of Nancy Rodriguez as printed by Walgreens Pharmacy for 1/1/06 to 12/11/12



EXHIBIT

C

2. Images of Prescription # 2046442-06861 as filled by Walgreens Pharmacy on 6/15/12
3. Cardiology Consultation Note performed by Vivek Goswami on patient Nancy Rodriguez on 2/10/12
4. Visit notes from Austin Heart on 2/15/12, 3/27/12, and 8/14/12.
5. Medical Records of Nancy Rodriguez from Seton Hospital emergency room and Intensive Care Unit visits

I conclude that the applicable standards of care and pharmacy practice regarding Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD handling of Ms. Rodriguez's prescription of dabigatran etexilate (PRADAXA) were not met, resulting in Ms. Rodriguez's injuries.

## Familiarity with the Standard of Care

I am familiar with the standard of care for pharmacy operations, including the handling of prescriptions in situations similar to that of Ms. Rodriguez's prescription of dabigatran etexilate (PRADAXA), including the refilling and processing of the prescription through my education, training, experience, continual interdisciplinary pharmacological education and review of specialty medical texts as well as medical articles covering pharmacy operations. As a pharmacy operations specialist, I have experience in multiple pharmacy settings in the US. In addition, I am currently practicing as a Pharmacy Operations Consultant, helping pharmacies implement regulatory compliance, procedural, and operations standards. I am specifically familiar with the standard of care applicable to pharmacists in situations like this for Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD based on my work in these areas of practice. Please also see my C.V. which is attached hereto and incorporated by reference for a full list of my education and experience.

## Standards of Care

The standard of care required to fill Ms. Rodriguez's dabigatran etexilate (PRADAXA) prescription are as follows:

- Pharmacists have a duty to contact the prescribing physician if patient harm is possible to validate the prescription
- Pharmacists are responsible for ensuring a prescription is accurately communicated and dispensed as intended by the prescriber
- Pharmacists are responsible for communicating with the prescribing physician to validate continuation of therapy when no refills remain on a prescription

## Breach of Standard of Care

Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD breached the applicable standards of care. Specifically, Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD conduct fell below the standard of care by:

- Continuing to dispense a prescription for dabigatran etexilate (PRADAXA) after the prescribing physician indicated it should be discontinued; and
- Failing to verify if the prescription for dabigatran etexilate (PRADAXA) should be continued with the prescribing physician

Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD should have provided Ms. Rodriguez with the care and treatment in the standard of care paragraph above. However, this expected care was not provided to Ms. Rodriguez as set forth in the preceding paragraph.

41

## Cause of Harm

In reasonable medical probability, the above itemized breaches in the standard of care resulted in Ms. Rodriguez's continued long term use of dabigatran etexilate (PRADAXA). Therefore it is clear that the long term use of dabigatran etexilate (PRADAXA) as dispensed by Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD caused Ms. Rodriguez's acute kidney injury, anemia, and gastrointestinal bleeding (which have lead to her long term clinical demise and medical injuries).

I reserve the right to amend this report should further discovery be made available.

Sincerely,

Dr. Jeffrey Chad Hardy, Pharm.D., M.S.



APPENDIX 3

# CURRICULUM VITAE

Prepared 01/01/14

Name:                Jeffrey Alan Breall, M.D., Ph. D.

Address:             Krannert Institute of Cardiology
                     Indiana University School of Medicine
                     1800 North Capitol Avenue, Room E-490
                     Indianapolis, IN 46202

Phone:               Home: (317) 496-8680        e-mail: jbreall@iu.edu
                     Work: (317) 962-0561        FAX: (317) 962-0566

Date of Birth:       May 28, 1956

Place of Birth:      San Francisco, California

Citizenship:         United States

Education:
   1978             B.A. in Physiology, University of California,
                    Berkeley, CA
   1983             Ph.D. in Physiology, University of California,
                    San Francisco, CA
   1987             M.D., Albert Einstein College of Medicine,
                    Bronx, NY

Postdoctoral Training Internship and Residencies:

   1987-1988        Intern in Medicine, Beth Israel Hospital,
                    Boston, MA
   1988-1989        Junior Assistant Resident, Internal Medicine,
                        Beth Israel Hospital, Boston, MA
   1989-1990        Senior Assistant Resident, Internal Medicine,
                    Beth Israel Hospital, Boston, MA
   1990-1993        Research and Clinical Fellow in Cardiology,
                        Harvard Medical School and
                    Beth Israel Hospital Boston, MA

Research Fellowships:
   1978-1979        Regent's Fellow in Physiology, University of California,
                    San Francisco
   1984             Research Fellow, Coronary Research Laboratory,
                    Albert Einstein College of Medicine
   1990, 1992       Cardiovascular Research Training Grant,
                    Harvard Medical School and Beth Israel Hospital


EXHIBIT
B
16

Licensure and Certification:

| | |
|---|---|
| 1989-1994 | Massachusetts License for Medicine and Surgery #7133 (inactive) |
| 1990-2000 | Diplomate-American Board of Internal Medicine #133098 |
| 1993-2001 | D. C. License for Medicine and Surgery #20206 (inactive) |
| 1993-2003 | Diplomate-American Board of Internal Medicine, |
| 2012-2022 | Subspecialty in Cardiovascular Diseases #133098 |
| 1999-2009 | Diplomate-American Board of Internal Medicine, |
| 2013-2023 | Subspecialty in Interventional Cardiology #133098 |
| 2000- | Indiana License for Medicine and Surgery #01052687A |

Academic Appointments:

| | |
|---|---|
| July 1987-June 1992 | Clinical Fellow in Medicine, Harvard Medical School, Boston, MA |
| July 1992-June 1993 | Instructor in Medicine, Harvard Medical School, Boston, MA |
| July 1993-June 1998 | Assistant Professor of Medicine (Cardiology) Georgetown University, Washington, D.C. |
| July 1998-June 2000 | Associate Professor of Medicine (Cardiology) Georgetown University, Washington, D.C. |
| July 2000- Present | Professor of Clinical Medicine (Cardiology) Indiana University School of Medicine, Indianapolis, IN |

Hospital/Clinical Appointments:

| | |
|---|---|
| July1989-June 1990 | Physician of the Day, Boston Veterans Administration Hospital, Boston, MA |
| July1989-June 1993 | Medical Officer of the Day, Brockton Veterans Administration Hospital, Brockton, MA |
| July1990-June 1993 | Urgent Care Physician, Peabody Medical Associates, Peabody, MA |
| July1990-June 1993 | Urgent Care Physician, Walk-In Center, Beth Israel Hospital, Boston, MA |
| July1990-June 1993 | Clinical Fellow, Cardiovascular Division, Beth Israel Hospital, Boston, MA |
| July1992-June 1993 | Attending Physician, Emergency Room, Beth Israel Hospital, Boston, MA |
| July1993-June 2000 | Attending Cardiologist and Associate Director, Cardiac Catheterization Laboratory Georgetown University Medical Center, Washington, D.C. |
| July1994-June 2000 | Attending Physician (WOC), Cardiology Section Washington Veterans Administration Hospital |

Hospital/Clinical Appointments (continued):

| | |
|---|---|
| July2000-Present | Attending Cardiologist, Cardiac Catheterization Laboratories and Interventional Cardiology, Indiana University |
| July 2000-Present | Attending Cardiologist, Methodist, University, West and North Hospitals (Indiana University Health), Indiana University |
| July 2000-Present | Attending Cardiologist, Wishard Memorial Hospital Indiana University, IUPUI |
| July 2000-Present | Attending Cardiologist, Richard L. Roudebush V. A. Hospital Indiana University, IUPUI |
| July 2000-2012 | Director, Cardiac Catheterization Laboratories and Interventional Cardiology, Indiana University |
| 2012-Present | Chief Information Technology and Safety Officer, Cardiovascular Service Line, Indiana University Health |

Awards and Honors:

| | |
|---|---|
| 1978 | Baccalaureate with Honors, University of California, Berkeley, CA |
| 1979-1980 | Teaching Assistantship, University of California, San Francisco, CA |
| 1982-1983 | Patent Fund Recipient, University of California San Francisco, CA |
| 1987 | Alpha Omega Alpha – Albert Einstein College of Medicine |
| 1996 | Excellence in Teaching Award, Cardiology Georgetown University Medical Center |
| 1997 | Outstanding Visit/Excellence in Teaching Award Georgetown University Medical Center, Dept of Medicine |
| 2000 | Lawrence A. Kyle Award for Excellence in House Staff Education Georgetown University Medical Center, Department of Medicine |
| 2000 | Sol Katz Society Award for Consistent Teaching Excellence Georgetown University Medical Center, Department of Medicine |
| 2009-2010 | Outstanding Teacher Award Indiana University School of Medicine Junior Medical Students |
| 2010-2011 | Department of Medicine Teaching Award Indiana University School of Medicine |

Invited Lectures:

| | |
|---|---|
| 1984 | Perinatal Research Conference Lecturer, The New York Hospital-Cornell Medical Center |
| 1992 | Emergency Medicine Lecturer, Beth Israel Hospital, Boston, MA |

Invited Lectures (continued):

| | |
|---|---|
| 1993 | Cardiovascular Grand Rounds |
| | LAC + USC Medical Center, Los Angeles, CA |
| 1993,1995 | Department of Surgery Grand Rounds |
| | Georgetown University Medical Center |
| 1994-1998 | Current Trends in Cardiology |
| | Sacred Heart Medical Center, Cumberland, MD |
| 1995 | Department of Medicine Grand Rounds |
| | Georgetown University Medical Center |
| 1995 | Rockingham Memorial Hospital Continuing Medical Education |
| | Rockingham Memorial Hospital, Harrisonburg, VA |
| 1996 | NYLCare/Georgetown University Physician Update |
| | Cardiology in General Medicine, Rockville, MD |
| 1996-1999 | American College of Physicians Internal Medicine Board Review |
| | Georgetown University Medical Center |
| 1996 | Multi Disciplinary Grand Rounds |
| | Georgetown University Medical Center |
| 1996 | Health Care Finance Administration/Peer Review Organization |
| | Forum on Quality Improvement Interventions, Boston, MA |
| 1996 | Third Annual Mid-Atlantic Conference for Cardiovascular |
| | Fellows, Georgetown University Medical Center |
| 1996 | MAMSI/Georgetown University |
| | Chest Pain Update, Bethesda, MD |
| 1996 | Vencor Hospital-Cardiology Update |
| | When to use Primary Angioplasty, Alexandria, VA |
| 1997 | Acute Myocardial Infarction-The First 72 Hours |
| | ACCess AMI Teleconference, American College of Cardiology |
| 1997 | Harvey-Hufnagel Symposium |
| | Georgetown University Medical Center |
| 1998 | Cardiology for the General Practitioner |
| | Georgetown University Medical Center |
| 1998 | Management of Non Q-Wave Myocardial Infarction |
| | University of Maryland Medical Center |
| 2000-2008 | Cardiology Update for Primary Care Physicians |
| | Krannert Institute of Cardiology, Indiana University |
| 2001 | Invited Debate:  The Radial Approach to Coronary Intervention: |
| | Not Routinely in the Patient's Best Interest |
| | American College of Cardiology, Orlando, FL |

Invited Lectures (continued):

| | |
|---|---|
| 2001 | Acute Coronary Syndromes—the current era<br>Indiana University Internal Medicine Board Review |
| 2001 | Current Management of Acute Coronary Syndromes<br>Cardiac Surgery Grand Rounds, Indiana University |
| 2002 | Session Co-Chair: Optimal Stent Results<br>American College of Cardiology, Atlanta, GA |
| 2002 | Panelist: Atherectomy-When, Where, Why and How<br>American College of Cardiology, Atlanta, GA |
| 2002 | Session Co-Chair: Stent Selection<br>American College of Cardiology, Atlanta, GA |
| 2002 | Division of Cardiology Grand Rounds: Peripheral Vascular<br>Disease for the Cardiologist<br>Indiana University School of Medicine |
| 2002 | Department of Medicine Grand Rounds: Optimal Reperfusion<br>Therapy for Acute Myocardial Infarction<br>Indiana University School of Medicine |
| 2002 | Department of Medicine Grand Rounds: Management of Acute<br>Coronary Syndromes<br>Indiana University School of Medicine |
| 2001- | Department of Medicine Noon Lecture Series:<br>Treatment of Acute Myocardial Infarction<br>Indiana University School of Medicine |
| 2003 | Drug Coated Stents, Cardiovascular Nursing Update,<br>Clarian Health Partners |
| 2004 | Update in Thrombosis Symposium, Acute Coronary Syndromes<br>The CARE Group |
| 2004 | Division of Cardiology Grand Rounds: Treatment of Unstable<br>Angina |
| 2004 | Applications in Diagnostic Imaging,<br>American Roentgen Ray Society, Indianapolis/Chicago |

Administrative Positions and Committees:

| | |
|---|---|
| 1978-1981 | Committee on Human Research, University of California,<br>San Francisco, CA |
| 1980-1983 | Graduate Student's Council, University of California,<br>San Francisco, CA |
| 1983-1987 | Committee on Admissions, Albert Einstein College of Medicine,<br>Bronx, NY |
| 1984-1986 | Faculty-Student Senate, Albert Einstein College of Medicine |

Administrative Positions and Committees (continued):

| | |
|---|---|
| 1993-2000 | Associate Director, Cardiac Catheterization Laboratories and Interventional Cardiology, Georgetown University Medical Center |
| 1993-2000 | Residency Selection Committee, Department of Medicine Georgetown University Medical Center |
| 1993-1997 | Chair, Cardiopulmonary Resuscitation Committee Georgetown University Medical Center |
| 1994-1997 | Animal Care and Use Committee Georgetown University Medical Center |
| 1994-1995 | Research Planning and Operations Committee, Dept of Medicine, Georgetown University Medical Center |
| 1995-1996 | Chair, PTCA Clinical Process Committee, Georgetown University Medical Center |
| 1995-2000 | Cardiac Catheterization Credentials Committee, Georgetown University Medical Center |
| 1995 | Chair, Chest Pain Clinical Process Committee, Georgetown University Medical Center |
| 1996, 2002- | Ad Hoc Reviewer; National Heart, Lung, and Blood Institute, Clinical Trials Review Committee |
| 1996-1997 | Clinical Resource Steering Committee, Georgetown University Medical Center |
| 1996-1999 | Quality Improvement Committee, Department of Medicine Georgetown University Medical Center |
| 1996-1997 | Quality Improvement Council, Georgetown University Medical Center |
| 1997 | Chair, Task Force on Graduate Training Opportunities, Department of Medicine, Georgetown University Medical Center |
| 1997 | Co-Chair, Hospital Task Force on Case Management, Georgetown University Medical Center |
| 1997-2000 | American Heart Association- Committee on Cardiac Catheterization |
| 1997-2000 | University Faculty Senate-Georgetown University |
| 1997 | Clinical Service Standard Subcommittee Georgetown University Medical Center |
| 1998-2000 | At-Large Member, Faculty Practice Group Board Georgetown University Medical Center |
| 1998-2000 | Vice Chair, Pharmacy and Therapeutics Committee Georgetown University Medical Center |
| 1998-2000 | Committee on Medical Education Georgetown University Medical Center |
| 2001- | Peripheral Vascular Disease Committee American College of Cardiology |

21

Administrative Positions and Committees (continued):

| | |
|---|---|
| 2001-2008 | Abstract Grader, Scientific Sessions, American Heart Association |
| 2000- | Director, Interventional Cardiology Section, Krannert Institute of Cardiology, Indiana University |
| 2000- | Cardiology Fellowship Selection Committee, Krannert Institute of Cardiology, Indiana University |
| 2000- | Director, Cardiac Catheterization Laboratories and Interventional Cardiology, Methodist Hospital, Indiana University Health |
| 2001- | Co-Chair, AMI Clinical Process Committee, Methodist Hospital, Methodist Hospital, Indiana University Health |
| 2002- | Member, Cardiovascular Operations Committee, Methodist Hospital, Indiana University Health |
| 2002- | Member, Cardiovascular Program Care Data Management Committee, Methodist Hospital, Indiana University Health |
| 2003- | Member, Executive Committee, Krannert Institute of Cardiology, Indiana University |
| 2003- | Member, Krannert Institute of Cardiology-Director-Search Committee, Indiana University |
| 2005- | Member, Pharmacy and Therapeutics Committee, Methodist Hospital, Indiana University Health |
| 2006- | Member, Level 1 Heart Attack Program Committee, Methodist Hospital, Indiana University Health |
| 2006- | Chair, Cardiovascular PCI Process Committee, Methodist Hospital, Indiana University Health |
| 2009- | Board of Directors, Indiana Chapter, American College of Cardiology |

## SUMMARY OF CLINICAL ACTIVITIES

During the past twelve years I have continued teaching medicine. I attend 2 weeks per year on the general cardiology service at Indiana University Health Methodist Hospital. During this time the team admits 40 new patients for initial evaluation. The team consists of a second or third year medical resident, two first year medical resident and frequently a third and fourth year medical student. The team may include pharmacy students, pharmacy residents, nursing students, physician assistants and nurse practitioners. In addition, I perform diagnostic and therapeutic cardiac catheterization procedures three days per week at the Indiana University Health Methodist Hospital and the Richard L. Roudebush Veterans Administration Medical Center. I specialize in teaching and performing high-risk percutaneous coronary interventions.

Teaching Assignments:

Ambulatory (Outpatient) Cardiology Elective:

> Serving as a preceptor for house-staff and junior medical students in outpatient cardiology clinic (four hour/week, Direct contact- cardiology system, history taking, bedside examination, and management plan formulation). 1993-present

The time spent in teaching medical students, residents and fellows on the cardiology service is a highlight of my academic year. I have spent years developing an approach to teaching that involves teaching the process of developing clinical judgment, disease pathogenesis, physical examination skills and presentation skills. The experience of teaching the eager students and residents continues to excite me as I remember my own experience on the medical service at the Bronx Municipal Hospital as a student. I continue to teach medical students, interns and residents, and fellows on the cardiology service at Indiana University Health Methodist Hospital and the Richard L. Roudebush Veterans Administration Medical Center—all under the auspices of Indiana University.

Weekly Conferences:

> Interventional Cardiology Conference (Every Tuesday),
> One hour conference dedicated to clinical case presentation, and year-long didactic lecture series devoted to invasive and interventional cardiology fellows.
>
> Clinical Decision Making Conference (Every Friday)
> One hour conference dedicated to clinical decision making and cardiac catheterization. Conference attended by cardiology fellows, medicine house-staff and medical students on cardiology rotation.

Monthly Conference:

> Co-chair: Morbidity and Mortality Conference
> One hour conference dedicated to morbidity and mortality in cardiac catheterization laboratories including didactic presentations.

Hands-on-training and supervision for general cardiology fellows during cardiac catheterization rotation. Teaching basic principles of radiation safety, X-ray imaging, and all diagnostic aspects of cardiac catheterizations (3 days/week)
Hands-on-training and supervision for interventional cardiology fellows during their one-year interventional cardiology fellowship. Teaching principles and practice of interventional cardiology procedures including balloon angioplasty, stent, atherectomy and valvuloplasty procedures. Advanced invasive diagnostic procedures such as intravascular ultrasonography (IVUS), intracoronary physiologic lesion assessment (Doppler and pressure wire) (4 days/week)

Administrative Assignments:

>   Assist with advancing appropriate use criteria and quality indicators for cardiology across all IU Health facilities

>   Assist with procurement and standardization of all interventional cardiology equipment across all IU Health facilities

>   Assist with procurement and standardization of a cardiovascular picture and archiving system across all IU Health facilities

## SUMMARY OF ADMINISTRATIVE ACTIVITIES

I have continued the work that I began nearly 20 years ago—building a superb clinical program. For the past twelve years this was as director of the interventional cardiology program at Indiana University Health. As such I helped develop protocols for best outcomes, helped establish the use of new procedures and devices for percutaneous intervention, and administered over a busy, high quality laboratory. I have now directed my efforts more recently on device standardization and price reduction across the Indiana University Health System. I am also serving as the clinical liaison as we implement a state-wide cardiovascular picture and report archiving system. I am also the clinical liaison for regulatory compliance for the cardiovascular service line, making recommendations about rules and regulations with respect to appropriate use, documentation and privacy.

Multi-center Clinical Investigations:

| | |
|---|---|
| 1991 | Co-investigator, Zatebradine trial for chronic stable angina |
| 1992 | Co-investigator, Thrombolysis in Myocardial Ischemia Study (TIMI 3), Beth Israel Hospital |
| 1992 | Associate-Director, Core Angiographic Laboratory, Thrombolysis in Myocardial Infarction Study (TIMI 4), Beth Israel Hospital |
| 1992 | Co-investigator, Thrombolysis in Myocardial Ischemia Study (TIMI 7), Beth Israel Hospital |
| 1993 | Co-Principal Investigator, Biobehavioral Triggers of Myocardial Ischemia Study (TOMIS), Georgetown University Medical Center |
| 1993 | Co-Principal Investigator, Coronary Regression with Estrogen in Women, Study (CREW), Georgetown University |
| 1994 | Co-investigator, Balloon versus Optimal Atherectomy Trial (BOAT), Georgetown University Medical Center |
| 1994 | Co-investigator, Thrombolysis and Thrombin Inhibition and Acute Myocardial Infarction Study (TIMI 9), Georgetown University Medical Center |

Multi-center Clinical Investigations (continued):

| | |
|---|---|
| 1995 | Co-investigator, Randomized Efficacy Study of Tirofiban (MK-383) for Outcomes and Restenosis (RESTORE) Georgetown University Medical Center |
| 1995 | Co-investigator, Randomized trial of aspirin versus aspirin plus heparin, versus aspirin plus hirudin in patients with acute myocardial infarctions not receiving thrombolytic therapy (ASIS-I), Georgetown University Medical Center |
| 1995 | Co-investigator, Stent Anti-thrombosis Regimen Study (STARS) Georgetown University Medical Center |
| 1996 | Co-investigator, Myocardial Infarction with Novastan and t-PA (MINT) Trial, Georgetown University Medical Center |
| 1996 | Co-investigator, ACS Multi-Link Stent Clinical Equivalence in De Novo Lesions Trial (ASCENT), Georgetown University Medical Center |
| 1996 | Co-investigator, Carotid Stent Supported Angioplasty (CSSA) Georgetown University Medical Center |
| 1996 | Co-investigator, Reduced Anticoagulation after Vein Graft Stenting Pilot Study (RAVES Pilot), Georgetown University Medical Center |
| 1997 | Co-investigator, Palmaz-Schatz *Crown* Balloon Expandable Stent with *Power Grip* Study, Georgetown University Medical Center |
| 1997 | Co-investigator, Medinol *Nirvana* Balloon Expandable Stent Georgetown University Medical Center |
| 1997 | Principal Investigator, EXCITE Trial (Evaluation of oral Xemilofiban in Controlling Thrombotic Events in patients undergoing coronary angioplasty or stent placement) |
| 1997 | Co-investigator, Bard EXTRA Trial (Evaluation of the XT stent for Restenosis in native Arteries) |
| 1998 | Clinical Events Committee Biocompatibles *divYsio* Stent Randomized Control Trial |
| 1999 | SCIMED SYMBIOT Covered Stent Feasibility Study Clinical Events Committee |
| 1999 | Co-investigator, Prevention of Restenosis with Tranilast and Its Outcomes (PRESTO) Georgetown University Medical Center |
| 1999 | Principal Investigator, Norvasc for Regression of Minimal to Moderate Atherosclerotic Lesions by Intravascular Sonographic Evaluation (NORMALISE) Georgetown University Medical Center |
| 2000 | Embol-X Aortic Cannula Feasibility Study Clinical Events Committee |

Multi-center Clinical Investigations (continued):

| | |
|---|---|
| 2001 | Principal Investigator, Pharmakokinetic Study of Enoxaparin in Patients Undergoing Percutaneous Coronary Intervention (PEPCI) Indiana University Medical Center |
| 2000 | Principal Investigator, Coronary Revascularization Utilizing INTEGRILIN and Single-bolus Enoxaparin (The Cruise Study) Indiana University Medical Center |
| 2001 | Principal Investigator, Sound Wave Inhibition of Neointimal Growth (The Swing Study) Indiana University Medical Center |
| 2001 | Principal Investigator, Sonotherapy Prevention of Late Arterial In-Stent Hyperplasia (The SPLASH Study) Indiana University Medical Center |
| 2001 | Co-Investigator, Evaluation of the RX ACHIEVE Drug Coated Coronary Stent System in the Treatment of Patients with De Novo Coronary artery Lesions (DELIVER Clinical Trial) Indiana University |
| 2002 | Study Assessing Goals in the Elderly (SAGE) Trial Chairman, Cardiovascular Events Adjudication Committee |
| 2002 | Co-investigator, A Prospective Randomized Trial Evaluating the Symbiot III Covered Stent System in Saphenous Vein Grafts (SYMBIOT III) Indiana University |
| 2003 | Principal Investigator, Investigator, Protection During Saphenous Vein Graft Intervention to Prevent Distal Embolization (PRIDE Study), Indiana University |
| 2002 | Principal Investigator, Spinal Cord Stimulation for the Treatment of Refractory Angina, Indiana University |
| 2002 | Principal Investigator, ACT Guided Coronary Interventions Registry using Dalteparin (ACT – 1), Indiana University |
| 2003 | Steering Committee, ACT Guided Coronary Interventions Registry using Dalteparin (ACT – 1), Indiana University |
| 2004 | Co-investigator, Proximal Protection during Coronary Intervention using the Proxis Embolic Protection System: A Randomized Multicenter Clinical Trial |
| 2003 | Principal Investigator, A Multicenter, Randomized, Double Blind Controlled Study to Evaluate the Efficacy and Safety of Ad5FGF-4 in Patients with Stable Angina (AGENT-3), Indiana University |
| 2003 | Principal Investigator, e-Cypher Registry, Indiana University |
| 2004 | Principal Investigator, The Assessment of the Medtronic AVE Interceptor Saphenous Vein Graft Filter System (AMEthyst), Indiana University |
| 2005 | Principal Investigator, Safety and Efficacy of Enoxaparin in PCI patients, an international randomized Evaluation (STEEPLE), Indiana University |

Multi-center Clinical Investigations (continued):

| | |
|---|---|
| 2004 | Principal Investigator, A randomized comparison of Angiomax versus Lovenox in patients undergoing early invasive management for acute coronary syndromes without ST-segment elevation (The ACUITY Trial), Indiana University |
| 2004 | Principal Investigator, (ARRIVE 2), Multi-Center Safety Surveillance Program, Taxus Express Drug Eluting Stent Platform, Indiana University |
| 2005 | Principal Investigator, A comparison of CS-747 and clopidogrel in acute coronary syndrome subjects who are to undergo percutaneous coronary intervention (TIMI-38), Indiana University |
| 2005 | Co-investigator, Multicenter trial of the Orqis Medical CRS for the Enhanced Treatment of CHF Unresponsive to Medical Therapy (MOMENTUM), Indiana University |
| 2005 | Principal Investigator, FREEDOM TRIAL: Future Revascularization Evaluation in Patients with Diabetes Mellitus: Optimal Management of Multivessel disease, Indiana University |
| 2006 | Principal Investigator, ENDEAVOR IV Trial: A Randomized Controlled Trial of the Medtronic Endeavor Drug (ABT-578) Eluting Coronary Stent System versus the Taxus Paclitaxel-Eluting Coronary Stent System in De novo Native Coronary Artery Lesions, Indiana University |
| 2006 | Co-investigator, VA Coronary Artery Revascularization in Diabetes Study—VA CARDS, Roudebush VA Medical Center |
| 2006 | Principal Investigator, ZoMaxx II Trial: A Randomized Controlled Trial of the ZoMaxx Drug Eluting Coronary Stent System versus the Taxus Express Paclitaxel-Eluting Stent System in do novo Coronary Artery Lesions |
| 2007 | Principal Investigator, PERSEUS Trial: A Randomized Controlled Trial of the Taxus Element Drug Eluting Coronary Stent System versus the Taxus Liberte' Paclitaxel-Eluting Stent System in do novo Coronary Artery Lesions |
| 2008 | Abbott Vascular SPIRIT SV and SPIRIT PRIME DES trials Chairman, Data and Safety Monitoring Committee |
| 2009 | Principal Investigator, PLATINUM Trial: A Randomized Controlled Trial of the Promus Element Drug Eluting Coronary Stent System versus the Promus Everolimus-Eluting Stent System in do novo Coronary Artery Lesions |
| 2013 | Chairman, Safety Oversight Committee: ABSORB Japan: A Clinical Evaluation of AVJ-301 Comparing with Metallic Drug-eluting Stent in the Treatment of Subjects with Ischemic Heart Disease in Japan |

Organizations and Societies:

| | |
|---|---|
| 1983 | American Medical Association |
| 1984 | New York Academy of Sciences |
| 1989-1993 | Massachusetts Medical Society |
| 1994- | Fellow, American Heart Association, |
| | Council on Clinical Cardiology |
| 1994-1996 | Affiliate, Society for Cardiac Angiography and Interventions |
| 1994- | Abraham M. Rudolph Developmental Cardiology Society |
| 1995- | Fellow, American College of Cardiology |
| 1995- | Fellow, American College of Chest Physicians |
| 1995- | Fellow, American College of Physicians |

Manuscript Review:

1. Cardiovascular Drugs and Therapy
2. Catheterization and Cardiovascular Intervention
3. Journal of the American College of Cardiology
4. Journal of the American Medical Association
5. American Journal of Cardiology
6. Coronary Artery Disease
7. Journal of the American Society of Echocardiography

Editorial Boards:

1. Diagnostic and Invasive Cardiology
2. Cardiology Case Reports
3. World Journal of Clinical Case Conference

Research Interests:

1. New devices for coronary intervention/high risk angioplasty
2. Quality Assurance in the Cardiac Catheterization Laboratory
3. Cost-effectiveness of coronary interventions
4. Primary angioplasty in acute myocardial infarction
5. Peripheral Vascular Disease

Publications

Articles:

1. Breall JA, Rudolph AM, Heymann MA: Role of thyroid hormone in postnatal circulatory and metabolic adjustments. *J Clin Invest* 1984; 73:1418-1424.

2. Khayyal MA, Eng C, Franzen D, Breall JA, Kirk ES: The effects of vasopressin on the coronary circulation: reserve and regulation during ischemia. *Am J Physiol* 1985; 248:H516-H522.

3. Levine MJ, Harada K, Meuse AJ, Watanabe J, Breall J, Carrozza JP, Bentivegna L, Franklin A, Johnson RG, Grossman W, & Morgan JP: Excitation -contraction uncoupling during ischemia in the blood perfused dog heart. *Biochem Biophys Res Commun* 1991; 179:502-6.

4. Breall JA, Kim D, Baim DS, Skillman JJ, Grossman W: Coronary-subclavian steal: an unusual cause of angina pectoris after successful internal mammary coronary artery bypass grafting. *Cathet Cardiovasc Diagn* 1991; 24:274-276.

5. Breall JA, Goldberger AL, Warren SE, Diver DJ, Sellke FW: Posterior mediastinal masses: rare causes of cardiac compression. *Am Heart J* 1992; 124:523-526.

6. Breall JA, Watanabe J, & Grossman W: The effect of zatebradine on contractility, relaxation and coronary blood flow. *J Am Coll Cardiol* 1993; 21:471-477.

7. Breall JA, Grossman W, Stillman IE, Gianturco LE, Kim D: Atherectomy of the subclavian artery for patients with symptomatic coronary-subclavian steal syndrome. *J Am Coll Cardiol* 1993; 21:1564-1567.

8. Cohen DJ, Breall JA, Ho KKL, Weintraub RM, Kuntz RE, Weinstein MC, Baim DS: The economics of coronary revascularization: comparison of costs and charges for conventional angioplasty, directional atherectomy, stenting and bypass surgery. *J Am Coll Cardiol* 1993; 22:1052-1059.

9. Gordon PC, Kugelmass AD, Cohen DJ, Breall JA, Friedrich SP, Carrozza JP Jr, Diver DJ, Kuntz RE, Baim DS: Use of balloon post-dilation to safely improve the results of successful (but sub-optimal) directional coronary atherectomy. *Am J Cardiol* 1993; 72:71E-79E.

10. The TIMI IIIB Investigators: Effects of tissue plasminogen activator and a comparison of early invasive and conservative strategies in unstable angina and non-Q-wave myocardial infarction: Results of the TIMI IIIB Trial. *Circ* 1994; 89:1545-1556.

11. Cohen DJ, Breall JA, Ho KKL, Kuntz RE, Goldman L, Baim DS, Weinstein MC: Evaluating the potential cost-effectiveness of stenting as a treatment for symptomatic single-vessel coronary artery disease: use of a decision-analytic model. *Circ* 1994; 89:1959-1874.

12. Gibson CM, Cannon CP, Piana RN, Breall JA, Sharaf B, Flatley M, Davis V, Diver DJ, McCabe CH, Flaker GC, Baim DS, Braunwald E, for the TIMI 4 Study Group: Angiographic predictors of reocclusion following thrombolysis: results from the TIMI 4 study. *J Am Coll Cardiol* 1995; 25:582-589.

Articles (continued):

13. Colleran JA, Burke AB, Moseley AL, Green SE, Breall JA, Virmani R: Subvalvular left ventricular outflow tract obstruction caused by "rhino-nodular" calcification. *Cardiovasc Pathol* 1995; 4:123-126.

14. Breall JA, Gersh BJ: Common manifestations of valvular heart disease in the elderly. *Cardiology in Review* 1995; 3:150-157.

15. Colleran JA, Tierney JP, Prokopchak R, Diver DJ, Breall JA: Angiographic presence of a myocardial bridge after successful percutaneous transluminal coronary angioplasty. *Am Heart J* 1996; 131:196-198.

16. Bui MN, Sack MN, Moutsatsos G, Lu DY, Katz P, McCown R, Breall JA, Rackley CE: Autoantibodies titers to oxidized low-density lipoprotien in patients with coronary atherosclerosis. *Am Heart J* 1996; 131:663-667.

17. Schultz SC, Breall J, Hannan R: Acute cardiac tamponade secondary to congenital factor V deficiency. *Cardiology* 1997; 88:48-9.

18. Berger AK, Breall JA, Gersh BJ: When is PTCA the treatment of choice for acute MI? *Contemporary Intrnal Medicine* 1997; 9:45-55.

19. Tavel ME, Breall JA, Gersh BJ: Ischemic heart disease with congestive heart failure. In: Tavel M ed. Clinical Problems in Cardiopulmonary Disease *Chest* 1998; 113:1119-1122.

20. Berger AK, Edris DW, Breall JA, Oetgen WJ, Marciniak TA, Molinari GF: Resource utilization and quality of care for Medicare patients with acute myocardial infarction in Maryland and the District of Columbia; Analysis of data from the Cooperative Cardiovascular Project. *Am Heart J* 1998; 135:349-356.

21. Breall JA, Solomon AJ, Gersh BJ: Non-Q wave myocardial infarction: You cannot judge a book by its cover. *ACC Current Journal Review* May/June 1998: 15-18.

22. Solomon AJ, Breall JA, Gersh BJ: Unstable angina: Current recommendations and new directions. *ACC Current Journal Review* May/June 1998: 18-23.

23. Weissman NJ, Sheris SJ, Chari R, Mendelsohn FO, Anderson WD, Breall JA, Tanguay J-F, Diver DJ:Intravascular Ultrasonic analysis of plaque characteristics associated with coronary artery remodeling. *Am J Cardiol* 1999; 84:37-40.

24. Berger AK, Schulman KA, Gersh BJ, Pirzada S, Breall JA, Johnson AE, Every NR: Primary coronary angioplasty vs thrombolysis for the management of acute myocardial infarction in elderly patients. *JAMA* 1999; 282:341-348.

25. Rashid H, Marshall RJ, Diver DJ, Breall JA: Spontaneous and diffuse coronary artery spasm unresponsive to conventional intracoronary pharmacologic therapy. A case report. *Cathet Cardiovasc Interv* 2000; 49:188-191.

26. Rashid H, Marshall RJ, Diver DJ, Breall JA: Use of atropine in the treatment of spontaneous coronary artery. *Cathet Cardiovasc Interv.* 2000; 50:375B-376.

27. Patel SR, Breall JA, Diver DJ, Gersh BJ, Levy AP: Does bradycardia promote coronary collateral growth in humans? *Coronary Artery Disease.* 2000; 11:467-472.

28. Sheifer SE, Rathore SS, Gersh BJ, Weinfurt KP, Oetgen WJ, Breall JA, Schulman KA: Time to presentation with acute myocardial infarction in the elderly: Association with race, gender, and socioeconomic status. *Circ* 2000; 102:1651-6.

Articles (continued):

29. Berger AK, Breall JA, Gersh BJ, Johnson AE, Oetgen WJ, Marciniak TA, Schulman KA Effect of diabetes mellitus and insulin use on survival after acute myocardial infarction in the elderly (The Cooperative Cardiovascular Project). *Am J Cardiol* 2001; 87:272-277.

30. Kalaria VG, Rouch C, Bourdillon PD, Breall JA: Distal emboli protection in patients undergoing percutaneous coronary intervention after a recent myocardial infarction. *Cathet Cardiovasc Interv.* 2002; 57:54-60.

31. Panchal VR, Kalaria V, Breall JA, March KL: Catheter-based gene therapy for angiogenesis. *Applications in Imaging Cardiac Interventions:* Oct 2002

32. Kalaria VG, Koradia N, Breall JA: Myocardial bridge: A clinical review. *Cathet Cardiovasc Interv* 2002; 57:552-556.

33. Bhatt DL, Lee BI, Castrella PJ, Pulsipher M, Rogers M, Cohen M, Corrigan VE, Ryan TJ Jr, Breall JA, Moses JW, Eaton GM, Sklar MA, Lincoff AM: Safety of concomitant therapy with eptifibatide and enoxaparin in patients undergoing percutaneous coronary intervention-results of the CRUISE study. *J Am Coll Cardiol* 2003; 41:20-25.

34. Bhakta D, Breall JA, Kalaria VG: Complete sinus inversus and bicuspid aortic valve stenosis. *J Invas Cardiol* 2003; 15:213-215.

35. Cline SL, Kalaria VG, von der Lohe E, Breall JA: Cerebrovascular complications of Cardiac Catheterization. In: Biller and O'Donnell, eds. Seminars in Cerebrovascular Disease and Stroke, New York, NY Elsevier, 2003, 3: 194-199.

36. Ramanuja S, Breall JA, Kalaria VG: The approach to "aspirin allergy" in cardiovascular patients. *Circ.* 2004; 110: e1-e4.

37. Carrozza JP Jr, Caussin C, Braden G, Braun P, Hansell F, Fatzinger R, Walters G, Kussmaul W, Breall J; TriActiv Pilot Study Investigators. Embolic protection during saphenous vein graft intervention using a second-generation balloon protection device: results from the combined US and European pilot study of the TriActiv Balloon Protected Flush Extraction System. *Am Heart J.* 2005,149:1136.

38. Coram R, George Z, Breall JA: Percutaneous intervention through a Cabrol composite graft. *Cathet Cardiovasc Interv.* 2005 66:356.

39. Carrozza JP Jr, Mumma M, Breall JA, Fernandez A, Heyman E, Metzger C and for the PRIDE Study Investigators; Randomized Evaluation of the TriActiv Balloon-Protection Flush and Extraction System for the Treatment of Saphenous Vein Graft Disease J Am Coll Cardiol. *J Am Coll Cardiol* 2005 46: 1677.

40. Karlsson G, Rehman J, Meltser HM, Kalaria VG, Breall JA: Increased Incidence of Stent Thrombosis in Patients with Cocaine Use. *Cathet Cardiovasc Interv.* 2007 69:955.

41. Kirtane AJ, Heyman ER, Metzger C, Breall JA, Carrozza JP Jr: Correlates of adverse events during saphenous vein graft intervention with distal embolic protection: A PRIDE Sub Study. *J Am Coll Cardiol Intv* 2008 1: 186

42. Kereiakes DJ, Turco MA, Breall J Farhat NZ, Feldman RL, McLaurin B, Popma JJ, Mauri L, Zimetbaum P, Massaro J, Cutlip DE, on behalf of the AMEthyst Study Investigators. A novel filter-based Embolic protection device for percutaneous intervention of saphenous vein graft lesions: Results of the AMEthyst randomized controlled trial. *J Am Coll Cardiol Intv* 2008. 1: 248

Articles (continued):

43. El Masry H, Breall JA: Alcohol septal ablation for hypertrophic obstructive cardiomyopathy: A review. *Curr Cardiol Rev* 2008, Volume 04, No. 03.

44. Antoun P, El Masry H, Breall JA: Sudden cardiac death complicating alcohol septal ablation: a case report and review of literature. *Cathet Cardiovasc Interv.* 73: 956 2009.

45. Benson MD, Breall J, Cummings OW, Liepnieks JJ: Biochemical characterization of amyloid by endomyocardial biosy. Amyloid. 2009. 16:9.

46. Lasala JM, Cox DA, Morris L, Breall JA, Mahoney PD, Horwitz PA, Shaw D, Hood KL, Mandinov L, Dawkins KD: Two-year results of paclitaxel-eluting stents in patients with medically treated diabetes mellitus from the TAXUS ARRIVE program. *Am J Cardiol* 2009, 103:1663.

47. Lasala JM, Cox DA, Dobies D, Baran K, Bachinsky WB, Rogers E, Breall JA, Lewis DH, Song A, Starzyk RM, Mascioli SR, Dawkins KD, Baim DS: Drug-eluting stent thrombosis in routine clinical practice: 2 year outcomes and predictors from the TAXUS ARRIVE Registries. *Circ Cardiovascular Interventions.* 2009, 2:285.

48. Bhatt DL, Lincoff AM, Gibson CM, Stone GW, McNulty S, Montalescot G, Kleiman NS, Goodman SG, White HD, Mahaffey KW, Pollack CV Jr, Manoukian SV, Widimsky P, Chew DP, Cura F, Manukov I, Tousek F, Jafar MZ, Arneja J, Skerjanec S, Harrington RA; CHAMPION PLATFORM Investigators. Intravenous platelet blockade with cangrelor during PCI. N Engl J Med. 2009 361(24):2330

49. Kreutz RP, Stanek EJ, Aubert R, Yao J, Breall JA, Desta Z, Skaar TC, Teagarden JR, Frueh FW, Epstein RS, Flockhart DA: Impact of proton pump inhibitors on the effectiveness of clopidogrel after stent placement: The Clopidogrel MEDCO Outcomes Study. Pharmacotherapy. 2010 30 (8): 787.

50. Jaradat ZA, Sayfo SM, Breall JA: Percutaneous alcohol septal ablation following surgical myectomy. *J Invasive Cardiol.* 2010 22 (8): 207.

51. Stone GW, Teirstein PS, Meredith IT, Farah B, Dubois CL, Feldman RL Dens J, Hagiwara N, Allocco DJ, Dawkins KD; PLATINUM Trial Investigators: A prospective, randomized evaluation of a novel everolimus-eluting coronary stent: the PLATINUM (a Prospective, Randomized Multicenter Trial to Assess an Everolimus-Eluting Coronary Stent System [PROMUS Element] for the Treatment of Up to Two de Novo Coronary Artery Lesions) trial. *J Am Coll Cardiol* 2011. 57: 1700

52. Bolad IA, Alqaqa'a A, Khan B, Srivastav SK, von der Lohe E, Sadanadan S, Breall JA: Cardiac events after non-cardiac surgery in patients with previous coronary intervention in the drug-eluting stent era. *J Invasive Cardiol.* 2011; 23 (7): 283

53. Suradi H, Breall JA: Successful use of the Impella device in Giant Cell Myocarditis as a bridge to permanent left ventricular mechanical support. *Tex Heart Inst.* 2011; 38(4): 437

54. Furlan AJ, Reisman Massaro J, Mauri L, Adams H, Albers GW, Felberg R, Herrmann H, Karr S, Landzberg M, Raizner A, Wechsler L. CLOSURE I Investigators: Closure or medical therapy for cryptogenic stroke with patent foramen ovale. *N Engl J Med.* 2012; 366 (11): 991

Articles (continued):

55. Kreutz RP, Nystrom P, Kreutz Y, Miao J, Destra Z, Breall JA, Li L, Chiang CW, Kovacs R, Flockhart DA, Jin Y: Influence of paraoxonase-1 Q192R and cytochrome P450 2C19 polymprphisms on clopidogrel response. *Clin Pharm: Advances and Applications*. 2012. 4: 13.

56. Kreutz RP, Breall JA, Kreutz Y, Owens J, Lu D, Bolad I, von der Lohe E, Sinha A, Flockhart DA: Protease receptor-1 (PAR-1) mediated platelet aggregation is dependent on clopidogrel response. *Thromb Res*. 2012. March 27.

57. Roe MT, Armstrong PW, Fox KA, White HD, Prabhakaran D, Goodman SG, Cornel JH, Bhatt DL, Clemmensen P, Martinez F, Ardissino D, Nicolau JC, Boden WE, Gurbel PA, Ruzyllo W, Dalby AJ, McGuire DK, Leiva-Pons JL, Parkhomenko A, Gottlieb S, Topacio GO, Hamm C, Pavlides G, Goudev AR, Oto A, Tseng CD, Merkely B, Gasparovic V, Corbalan R, Cinteză M, McLendon RC, Winters KJ, Brown EB, Lokhnygina Y, Aylward PE, Huber K, Hochman JS, Ohman EM; TRILOGY ACS Investigators: Prasugrel versus clopidogrel for acute coronary syndromes without revascularization. *N Engl J Med*. 2012. 367:14.

58. Farkouh MS, Domanski M, Sleeper LA, Siami FS, Dangas G, Mack M, Yang M, Cohen DJ, Rosenberg Y, Solomon SD, Desai AS, Gersh BJ, Magnuson EA, Lansky A, Boineau R, Weinberger J, Ramanathan K, Sousa JE, Rankin J, Bhargava B, Buse J, Heub W, Smith CR, Muratov V, Bansilal S, King S 3rd, Bertrand M, Fuster V; FREEDOM Trial Investigators: Strategies for multivessel revascularization in patients with diabetes. *N Engl J Med*. 2012. 367:2375.

59. Godley RW, Joshi K, Breall JA: A comparison of hand injection versus automated contrast injectors during cardiac catheterization. *J Invasive Cardiol*. 2012. 24:628.

60. Kreutz RP, Owens J, Breall JA, Lu D, von der Lohe E, Bolad I, Sinha A, Flockhart DA. C-reactive protein and fibrin clot strength measured by thromboelastography after coronary stenting. *Blood Coagul Fibrinolysis*. 2013 3:321.

61. Kreutz RP, Owens J, Jin Y, Nystrom P, Desta Z, Kreutz Y, Breall JA, Li L, Chiang C, Kovacs RJ, Flockhart DA. Cytochrome P450 3A4*22, PPAR- α, and ARNT polymorphisms and clopidogrel response. *Clin Pharmacol* 20135:185.

Book Chapters:

1. Breall JA, Gersh BJ. The Results of Transluminal Interventions in Coronary Artery Disease. In: Bertrand M, Serruys P, Sigwart U, eds. Handbook of Cardiovascular Interventions. London, UK: Churchill Livingstone, 1996, 501-514.

2. Breall JA, Rodak DJ: Intermediate Coronary Syndrome. In: Conti CR, ed. Adult Clinical Cardiology Self Assessment Program (ACCSAP) on CD-ROM. American College of Cardiology/American Heart Association, 1997; 2000.

3. Gersh BJ, Breall JA, Diver DJ: The Role of Primary Angioplasty in the Management of Acute Myocardial Infarction. In: Opie LH and Yellon DM, ed. Cardiology at the Limits.The Rustica Press, 1997, 26-49.

Book Chapters: (continued):

4. Diver DJ, <u>Breall JA</u>: Balloon valvuloplasty: aortic valve. In: Yusef S, Cairns JA, Camm AJ, Fallen EL, Gersh BJ, ed. Evidence Based Cardiology. Tavistock Square, London: BMJ Books, BMA House, 2nd ed. 2003, 782-795.

5. Meuth MJ, Green CE, <u>Breall JA</u>: Interventional techniques for coronary artery disease. In: Taveras JM & Ferrucci JT, eds. RADIOLOGY Diagnosis*Imaging* Intervention. 2:132. Philadelphia, PA: Lippincott Williams & Wilkins, 1999.

6. Meldrum DR, Raiesdana A, <u>Breall JA</u>, Brown JW: Heart Transplantation. In: Harken AH & Moore EE, eds. Abernathy's Surgical Secrets, 91:319. Philadelphia, PA: Hanley & Belfus, 2004

7. Meldrum DR, Raiesdana A, <u>Breall JA</u>, Brown JW: Heart Transplantation. In: Harken AH & Moore EE, eds. Abernathy's Surgical Secrets, 91:323. Philadelphia, PA: Hanley & Belfus, 2004

8. <u>Breall JA</u>, Aroesty JM, Simons M: Overview of the management of unstable angina and acute non-ST elevation (non-Q wave) myocardial infarction. In: Rose BD, ed. UpToDate™ in Cardiovascular Medicine, Waltham, MA, 2012

9. <u>Breall JA</u>, Simon M: Risk stratification after unstable angina or non-ST elevation (non-Q-wave) myocardial infarction. In: Rose BD, ed. UpToDate™ in Cardiovascular Medicine, Waltham, MA, 2012

10. <u>Breall JA</u>, Simons M: Coronary arteriography and revascularization following unstable angina or non ST-elevation (non-Q wave) acute myocardial infarction. In: Rose BD, ed. UpToDate™ in Cardiovascular Medicine, Waltham, MA, 2012

11. Emery M, <u>Breall JA</u>: Disparities in the delivery of cardiovascular care. In: Rose BD, ed. UpToDate™ in Cardiovascular Medicine, Waltham, MA, 2012

Non-peer reviewed publications:

No-Reflow Phenomenon During PCI | Diagnostic and Invasive Cardiology July 15, 2011
When to Consider Revascularization of Coronary Chronic Total Occlusion| Diagnostic and Invasive Cardiology March 19, 2012
Understanding Contrast-Induced Nephropathy | DI Cardiology May 15, 2012
Justifying the Use of Vascular Closure Devices | DI Cardiology September 13, 2013

Abstracts

1. <u>Breall JA</u> and Nicoll CS: Somatotrophic Effects of Prolactin in Neonatal Rats. Western Regional Conference on Endocrinology. Santa Cruz, CA 1978.

2. Clyman RI, <u>Breall J</u>, Maher P, Campbell D, Maury F: Thyroid Hormones and the Ductus Arteriosus. The Society for Pediatric Research. Washington, D.C. 1985.

3. <u>Breall JA</u>, Watanabe J, Grossman W: Comparative Effects of ULFS-49 and Verapamil on Heart Rate and Contractility in Isolated Hearts. American College of Cardiology. Atlanta, GA 1991.

Abstracts (continued):

4. Cohen DJ, Breall JA, Ho KKL, Baim DS: Comparative Costs of Two New Technologies, Conventional Angioplasty, and Bypass Surgery for Elective Coronary Revascularization. American Heart Association, New Orleans, LA 1992.

5. Cohen DJ, Kuntz R., Breall JA, Ho KKL., Goldman L, Weinstein MC, Baim DS: The Incremental Cost-Effectiveness of Coronary Stenting versus Conventional Angioplasty: A Decision-Analytic Model. American Heart Association, New Orleans, LA 1992.

6. Gibson CM, Cannon CP, Piana RN, Maher KA, Davis SD, Breall JA, Davis V, Diver DJ: Relationship of Coronary Flow to Myocardial Infarction Size: Two Simple Methods to Sub-classify TIMI Flow Grades. American Heart Association, New Orleans, LA 1992.

7. Gibson CM, Piana RN, Davis SF, Maher KA, Breall JA, Davis V, Diver DJ, Baim DS: Improvement in Minimum Lumen Diameter During First Day After Thrombolysis. American Heart Association, New Orleans, LA 1992.

8. Gibson CM, Cannon CP, Piana RN, Breall JA, Davis SF, Maher KA, Flatley M, Davis V, Diver DJ, Baim DS for the TIMI 4 Study Group: Consequences of TIMI Grade 2 vs. 3 Flow at 90 Minutes Following Thrombolysis. American College of Cardiology, Anaheim, CA 1993.

9. Cohen DJ, Kuntz RE, Friedrich SP, Gordon PC, Breall JA, Ho KK, Weinstein MC, Baim DS: Cost-Effectiveness of Directional Atherectomy, Stenting, and Conventional Angioplasty in Single-Vessel Disease: A Decision-Analytic Model. American College of Cardiology, Anaheim, CA, 1993.

10. Gordon P, Kugelmass AD, Breall JA, Friedrich SP, Cohen DJ, Diver DJ, Baim DS: Selective Use of Balloon Post-dilation Can Safely Improve the Results of Successful (but Sub-optimal) Directional Coronary Atherectomy. American Heart Association, Atlanta, GA 1993.

11. Cohen DJ, Gordon PC, Friedrich SP, Breall JA, Diver DJ, Weinstein MC, Baim DS: The Cost-Effectiveness of Selective Adjunctive Balloon Dilation after Successful (but Sub-optimal) Directional Coronary Atherectomy: A Decision-Analytic Model. American Heart Association, Atlanta, GA 1993

12. Moscucci M, Kugelmass AD, Piana RN, Gordon PC, Wood M, Friedrich SP, Breall JA, Kuntz RE: The Value of Using Simple Logistic Models of Target Site-Related Clinical Events in the Evaluation of Vein Graft Restenosis. American Heart Association, Atlanta, GA 1993.

13. Diver DJ, Brown BG, Breall JA, Berger C, Dunn S, Thompson B, McCabe CH, Braunwald E: Characterization of Patient Management and Outcomes in the TIMI-IIIA Trial. American College of Cardiology. Atlanta, GA 1993.

14. Sack MN, Katz P, McCown R, Breall JA, Rackley CE: An Enzyme Linked Immunosorbent Assay of Autoantibodies to Oxidized Low-Density Lipoproein as a Predictor of Coronary Artery Disease. American College of Cardiology. Atlanta, GA 1993.

Abstracts (continued):

15. Bui MN, Moutsatsos G, Sack MN, Lu D, Breall JA, Katz P, Rackley CE: Autoantibody Titers to Oxidized LDL in Patients with Coronary Artery Disease and Stable and Unstable Angina. American Federation for Clinical Research. San Diego, CA 1995.

16. Gannuscio JR, Breall JA, Diver DJ, Lawrence W: PTCA Clinical Process Team Decreases Hospital Costs and Length of Stay. Transcatheter Cardiovascular Therapeutics. Washington, D.C. 1996.

17. Arora UK, Chari R, Breall JA, Diver DJ, Weissman NJ: Does Coronary Calcification Predict Atherosclerotic Placque Burden: A 3-Dimensional Intravascular Ultrasound Analysis. American Heart Association, New Orleans, LA 1996.

18. Weissman NJ, Chari R, Mendelsohn FO, Foster GP, Anderson WD, Breall JA, Tanguay J, Diver DJ, Gersh BJ: Patient and Plaque Characteristics Associated with Coronary Remodeling: An Intravascular Ultrasound Analysis. American College of Cardiology, Anaheim, CA 1997.

19. Weissman NJ, Arora UK, Breall JA, Gannuscio JR, Diver DJ, Gersh BJ: In Vivo Gender Differences in Coronary Artery Plaque Morphology Assessed by Intravascular Ultrasound. American College of Cardiology, Anaheim, CA 1997.

20. Arora UK, Chari R, Mendelsohn FO, Foster GP, Breall JA, Diver DJ, Weissman NJ: Altered Plaque Distribution in Hypertensive Patients. American College of Cardiology, Anaheim, CA 1997.

21. Arora UK, Chari R, Breall JA, Diver DJ, Weissman NJ: Calcified Luminal Surface Area: An Improved Method to Quantify Coronary Calcification Using 3D IVUS Analysis. American Society of Echocardiography, Orlando, FL 1997.

22. Arora UK, Chari R, Mendelsohn FO, Breall JA, Diver DJ, Weissman NJ: Increased Coronary Atherosclerotic Plaque Burden and Calcification in Diabetic Patients by 3D Intravascular Ultrasound Analysis. American Heart Association, Orlando, FL 1997.

23. Arora UK, Chari R, Breall JA, Diver DJ, Weissman NJ: The Aging Atherosclerotic Plaque: In Vivo Morphologic Analysis and Gender Differences using Intravascular Ultrasound. American Heart Association, Orlando, FL 1997.

24. Arora UK, Chari R, Breall JA, Diver DJ, Weissman NJ: Adventitial Changes with Atherosclerosis: In Vivo Observations and Implications for IVUS Assessment of Plaque Morphology. American Heart Association, Orlando, FL 1997.

25. Arora UK, Little RW, Chari R, Breall JA, Diver DJ, Weissman NJ: Are Plaques Different in African Americans? A 3D Intravascular Ultrasound Study of Coronary Plaque Morphology. American Heart Association, Orlando, FL 1997.

26. Berger AK, Breall JA, Johnson AE, Schulman KA, Gersh BJ, Oetgen WJ, Pirzada SR, Frederick PR, Every NR: Primary Angioplasty versus Thrombolytic Therapy in the Elderly: The CCP Experience. American Heart Association, Orlando, FL 1997.

27. Berger AK, Johnson AE, Breall JA, Oetgen WJ, Marciniak TA, Gersh BJ, Schulman KE: The Effect of Diabetes on Mortality in Medicare Beneficiaries with Acute Myocardial Infarction? American Heart Association, Orlando, FL 1997.

Abstracts (continued):

28. Every NR, Pirzada SR, Frederick PD, Robinson MB, <u>Breall JA</u>, Schulman KA:The Association Between Procedure Volume and Mortality in Primary PTCA: The CCP Experience. American Heart Association, Orlando, FL 1997.

29. Deutch E, Gordon PC, Diver DJ, <u>Breall JA</u>, FitzPatrick M, Senerchia C, Ho KKI: Safety and Efficacy of Coronary Stenting after Recent Myocardial Infarction: Results From the Stent Anticoagulation Regimen Study (STARS). American Heart Association, Orlando, FL 1997.

30. Patel SR, <u>Breall JA</u>, Gersh BJ, Levy: Does Bradycardia Promote Coronary Collateral Growth in Humans? American College of Cardiology, Atlanta, GA 1998.

31. Berger AK, Johnson AE, <u>Breall JA</u>, Schulman KA, Gersh BJ: Does Diabetes Affect the Clinical Presentation of Elderly Patients with Acute Myocardial Infarction? American College of Cardiology, Atlanta, GA 1998.

32. Oetgen WJ, Berger AK, Edris DW, Lesher ML, Jones J, Sdhuster M, Karge G, <u>Breall JA</u>, Fitzgerald M, Molinari GF: Improvement in Treatment Quality Indicators For Elderly Patients with Acute Myocardial Infarction: The Cooperative Cardiovascular Project in Maryland and the District of Columbia. American College of Cardiology, New Orleans, LA 1999.

33. Kalaria VG, <u>Breall J</u>, Class S, Sprague K, Bahro AG, Falcone W, Shoultz C, Dorogy ME: The Safety & Economic Impact of Immediate Ambulation after Diagnostic Catheterization Using a Suture Mediated Closure Device. Society of Cardiac Angiography and Intervention. Boston, MA 2003.

34. Karlsson G, Rehman J, Meltser HM, Kalaria VG, <u>Breall JA</u>: High Rate of Stent Thrombosis in Cocaine Users Undergoing Coronary Stent Placement. American College of Cardiology, New Orleans, LA 2004.

35. Rampurwala A, <u>Breall J</u>, von der Lohe E: Trend Towards Reduced Vascular Complications in Women Undergoing Diagnostic Heart Catheterization with 4 French Versus 6 French Catheters. Society for Cardiac Angiography and Interventions, Chicago, IL 2006.

36. Kerieiakes D, Turco M, McLaurin B, Feldman R, Farhat N, <u>Breall J</u>, Foster M: The AMEthyst Trial; A prospective randomized controlled study of the Medtronic Interceptor PLUS Coronary Filter System for PCI of Degenerative SVG. TCT Washington, DC 2007.

37. Lasala JM, Cox DA, Morris DL, Breall JA, Mahoney PD, Horwitz PA, Shaw D, Mandinov L, Dawkins KD: TAXUS Mitigates the Effects of Diabetes on Restenosis Independent of Patient Risk Profile: 2-Year Results of the TAXUS ARRIVE Program. TCT. Washington, DC 2008.

38. Singh IM, Antoun PS, Shoemaker TJ, Terry C, Kwo PY, Tector JA, Breall JA, Sadanandan S: Cardiac Catheterization as a Strategy for Pre-Operative Risk Stratification in Patients Undergoing Liver Transplantation. SCAI Washington DC 2008

Abstracts (continued):

39. Stanek EJ, Aubert RE, Flockhart DA, Kreutz RP, Yao J, Breall JA, Desta Z, Sklaar T, Freuh FW, Teagarden JR, Epstein RS: A National Study of the Individual Proton Pump Inhibitors on Cardiovascular Outcomes in Patients Treated with Clopidogrel Following Coronary Stenting: The Clopidogrel Medco Outcomes Study. SCAI. Las Vegas, NV 2009

# Jeffrey A. Breall M.D., Ph.D.

Jeffrey A. Breall M.D., Ph.D.
13960 Salsbury Creek Dr
Carmel, IN 46032
317-496-8680
jbreall@iu.edu

L. Todd Kelly, Esq.
The Carlson Law Firm, P.C.
11606 N. IH-35
Austin, TX 78753

March 18, 2014

RE: Nancy Jo Rodriguez

Dear Mr. Kelly:

Thank you very much for the opportunity to review the records in the case involving the above named individual. At your request, I had the opportunity to review, in detail, all of the materials which you sent to me including Ms. Rodriguez's various in-patient hospital records at Seton Northwest, outpatient cardiology records from Austin Heart, extended care facility records at Ashwood Assisted Living, and her outpatient counseling records.

I hold a medical license in the State of Indiana. I am over eighteen, years of age, and of sound mind. I earned my undergraduate degree from the University of California, and my medical degree from Albert Einstein College of Medicine. I have been practicing cardiovascular medicine for 21 years. By virtue of my education, training and experienced, I am qualified to render opinions regarding the standard of care in treating a patient such as Nancy Jo Rodriguez, as well as causation in this case. I was practicing medicine at the time of the care rendered in this matter and continue to practice medicine at the time of this report.

I possess the following qualifications for rendering my opinions in the above-referenced matter: I am currently board certified by the American Board of Internal Medicine in the fields of Cardiovascular Diseases as well as in Interventional Cardiology; I have published numerous articles in these fields and I teach these subjects to trainees on a daily basis; I hold numerous administrative positions. To further delineate these qualifications, an update copy of my *curriculum vitae* is enclosed.



EXHIBIT
D

43

In my opinion the care and treatment provided to Nancy Jo Rodriguez by Austin Heart fell below the accepted standards of care in the following particulars: Despite Dr. David Kessler, one of her cardiologists from Austin Heart, requesting that the Pradaxa be discontinued (in this patient who, at best, has bipolar disorder and at times was confused, this was a reasonable request), Pradaxa therapy nevertheless was continued after her acute hospitalization. This request to stop the medication was not appreciated by her primary cardiologist, Dr. Vivek Goswami (who was in the same group as Dr. Kessler). Furthermore, Ms. Rodriguez appeared to be obtaining refills for this medication authorized by nurses and staff of this same heart group who recommended discontinuing this medication (Austin Heart). The standard of care would have been to follow the orders of Dr. Kessler to stop the administration of Pradaxa.

Failure to discontinue the use of Pradaxa was a direct cause of her subsequent acute admission to the hospital with hypotension, acute kidney injury and apparent gastrointestinal bleeding – known side effects of the over-use of Pradaxa. Ms. Rodriquez's entire hospitalization was attributable to the failure to stop Pradaxa therapy as ordered by Dr. Kessler. More likely than not, had the Pradaxa medication been discontinued as requested, Ms. Rodriguez's hospitalization would never have needed to take place.

I hold these opinions to a reasonable degree of medical certainty. They are based upon my education, training and experience as well as the records which I have reviewed.

If I can answer any further questions or be of any further service, at any time, please do not hesitate to contact me immediately.

With kindest regards,

Jeffrey A. Breall M.D., Ph.D.

Professor of Clinical Medicine

APPENDIX 4

LEXSTAT

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 4. LIABILITY IN TORT
CHAPTER 74. MEDICAL LIABILITY
SUBCHAPTER H. PROCEDURAL PROVISIONS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

Tex. Civ. Prac. & Rem. Code § 74.351 (2014)

§ 74.351. Expert Report

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

(d) to (h) [Reserved].

(i) Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a

physician or health care provider.

(j) Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

(k) Subject to Subsection (t), an expert report served under this section:

(1) is not admissible in evidence by any party;

(2) shall not be used in a deposition, trial, or other proceeding; and

(3) shall not be referred to by any party during the course of the action for any purpose.

(*l*) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

(m) to (q) [Reserved].

(r) In this section:

(1) "Affected parties" means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.

(2) "Claim" means a health care liability claim.

(3) [Reserved].

(4) "Defendant" means a physician or health care provider against whom a health care liability claim is asserted. The term includes a third-party defendant, cross-defendant, or counterdefendant.

(5) "Expert" means:

(A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

(B) with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402;

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

(E) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

(6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or

health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

(s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

(2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and

(3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

(t) If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

(u) Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

**HISTORY:** Enacted by Acts 2003, 78th Leg., ch. 204 (H.B. 4), § 10.01, effective September 1, 2003; am. Acts 2005, 79th Leg., ch. 635 (H.B. 2645), § 1, effective September 1, 2005; am. Acts 2013, 83rd Leg., ch. 870 (H.B. 658), § 2, effective September 1, 2013.



APPENDIX 5

LEXSTAT

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*

CIVIL PRACTICE AND REMEDIES CODE
TITLE 4. LIABILITY IN TORT
CHAPTER 74. MEDICAL LIABILITY
SUBCHAPTER I. EXPERT WITNESSES

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

Tex. Civ. Prac. & Rem. Code § 74.402 (2014)

§ 74.402. Qualifications of Expert Witness in Suit Against Health Care Provider

(a) For purposes of this section, "practicing health care" includes:

(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or

(2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.

(b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2) is actively practicing health care in rendering health care services relevant to the claim.

(d) The court shall apply the criteria specified in Subsections (a), (b), and (c) in determining whether an expert is qualified to offer expert testimony on the issue of whether the defendant health care provider departed from accepted

standards of health care but may depart from those criteria if, under the circumstances, the court determines that there is good reason to admit the expert's testimony. The court shall state on the record the reason for admitting the testimony if the court departs from the criteria.

(e) This section does not prevent a health care provider who is a defendant, or an employee of the defendant health care provider, from qualifying as an expert.

(f) A pretrial objection to the qualifications of a witness under this section must be made not later than the later of the 21st day after the date the objecting party receives a copy of the witness's curriculum vitae or the 21st day after the date of the witness's deposition. If circumstances arise after the date on which the objection must be made that could not have been reasonably anticipated by a party before that date and that the party believes in good faith provide a basis for an objection to a witness's qualifications, and if an objection was not made previously, this subsection does not prevent the party from making an objection as soon as practicable under the circumstances. The court shall conduct a hearing to determine whether the witness is qualified as soon as practicable after the filing of an objection and, if possible, before trial. If the objecting party is unable to object in time for the hearing to be conducted before the trial, the hearing shall be conducted outside the presence of the jury. This subsection does not prevent a party from examining or cross-examining a witness at trial about the witness's qualifications.

**HISTORY:** Enacted by Acts 2003, 78th Leg., ch. 204 (H.B. 4), § 10.01, effective September 1, 2003.